Russell WALTERS et al., Plaintiffs,

v.

ROADWAY EXPRESS, INC., et al., Defendants.

Civ. A. No. 1630(N).

United States District Court, S. D. Mississippi, E. D.

June 5, 1975.

Dixon L. Pyles, Jackson, Miss., for plaintiffs.

Edward C. Kaminski, Akron, Ohio, Charles R. Davis, Jackson, Miss., Moran M. Pope, Jr., Hattiesburg, Miss., for defendants, Roadway Express, Inc., and Roadway Express, Inc. of Mississippi.

Edward B. Cloutman, III, G. William Baab, Dallas, Tex., for Int. Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local 891, Teamsters, Chauffeurs, Warehousemen & Helpers of America.

## MEMORANDUM OPINION

NIXON, District Judge.

This action was filed by the named plaintiffs individually and as class representatives seeking declaratory and injunctive relief as well as damages to redress the deprivation of rights secured and protected by 49 U.S.C. § 5(2)(f), 29 U.S.C. § 185(a), 42 U.S.C. § 1985(3), and 28 U.S.C. § 2201. Jurisdiction of this action is based on 28 U.S.C. § 1331 (b), 28 U.S.C. § 1337, 28 U.S.C. § 1343(1), (2), (4), 49 U.S.C. §§ 8 and 9, and 29 U.S.C. § 185(a). Pursuant to the provisions of Rule 23, F.R.Civ.P., the plaintiffs bring this action on their own behalf and on behalf of the class composed of and including all relay drivers of Roadway Express, Inc. (Roadway) working out of its Meridian, Mississippi terminal on runs from Meridian to Dallas and Houston, Texas who were employed on February 6, 1970, as well as certain employees of Roadway at the Meridian terminal who were allegedly unlawfully discharged subsequent to February 6, 1970.

The issues presented by the Complaint are (1) whether the dovetailing of seniority rights of employees of the defendant Roadway Express, Inc., of Miss. (hereinafter referred to as West Brothers drivers) transferred by the co-defendant Roadway Express, Inc., to its Meridian terminal subsequent to August 18, 1969 with the seniority rights of the plaintiffs was in violation of the terms of the applicable Collective Bargaining Agreement then in existence and in violation of Interstate Commerce Commission proceedings and orders; and (2) whether the discharge of certain named plaintiffs in this case was in violation of the terms of the Collective Bargaining Agreement. However, this Court by an Order filed on September 5, 1974, granted a partial Summary Judgment in favor of the defendants, Roadway (Roadway Express, Inc. and Roadway Express, Inc. of Mississippi) on the plaintiffs' charge of violation of Interstate Commerce Commission laws, regulations, procedures or orders in connection with the *Control* proceeding, No. MC–F–10178, and the *Merger* proceeding, No. MC–F–11457, before the ICC by the dovetailing. This charge was dismissed without prejudice to further prosecution in the case of *Walters, et al v. The United States*, Civ. No. 73E–18 (R) and *Walters, et al v. The United States*, Civ. No. 73E–56(N) which are pending in this District, the latter being of a Three-Judge case challenging the validity of the ICC orders. This Court denied the plaintiffs' request for a summary judgment and preliminary injunctive relief as well as the motions of the defendants, IBT and Local 891, for judgment on the pleadings and for summary judgment and the motion of the two defendants Roadway for a full summary judgment.

The named plaintiffs and their class contend that the defendants, Roadway (both), the International Union and Local 891 breached their Collective Bargaining Agreement in violation of public policy and 49 U.S.C. § 5(2)(f) by colluding and conspiring with each other and acting pursuant thereto by dovetailing the seniority of the plaintiffs with that of other drivers transferred to its Meridian terminal subsequent to August 18, 1969 and challenging the decisions of the Change of Operations Committee and the Southern States Multi-Confer-

ence Committee, set up to settle disputes of this type under the contract,[1] which approved or permitted the dovetailing. More specifically, the plaintiffs contend that those committees exceeded their authority by ordering the dovetailing of seniority and that the defendant Unions breached their duty of fair representation of them before those committees in the transfer and seniority hearings. Also, five of the eight discharged employees allege that they were discharged by the defendant, Roadway, contrary to the provisions of and in violation of the Collective Bargaining Agreement in existence (Exhibit P–78) and that the defendant Unions, their exclusive bargaining agents, violated their duty of fair representation by acting arbitrarily or in bad faith in representing them before the Joint Grievance Committee which upheld the discharge of five of the eight plaintiffs.[2]

These two issues were fully tried before this Court without a jury, pursuant to the request of the plaintiffs who had previously demanded a jury trial, and with the consent of the defendants. After having heard and considered all of the evidence presented by the parties, this Court makes the following findings of fact and reaches the following conclusions of law.

## THE DOVETAILING OF SENIORITY

The plaintiffs base this Complaint, inter alia, on Section 301 of the LMRA of 1974, 29 U.S.C. § 185 (1970) contending that the decisions of the Change of Operations Committee (COC) and the appellate tribunal, the Multi-Conference Committee, set up to settle disputes under the collective bargaining agreement entered into between Roadway and the defendant unions, had exceeded their power by ordering and approving the dovetailing of seniority of West Brothers drivers into the seniority list at the Meridian, Mississippi terminal for job selection, rather than putting their names at the bottom thereof.[3]

Whether an employee's name is placed at the bottom of the seniority list or "dovetailed" into it is vital to over-the-road truck drivers in establishing the order of job selection, inasmuch as different runs take place at different hours and on different days and seniority permits bidding of certain jobs which are more beneficial to a driver both from the standpoint of hours worked and pay therefor, and also, because those at the bottom of the list may have no regular jobs at all but may become members of the "extra board" whose income will vary and depend on the amount of traffic or work of the trucking company.

The National Master Freight Agreement and Southern Conference Area Over-the-Road Agreement, the collective bargaining contract which was in effect at all times in question[4] contained two pertinent provisions governing the seniority issue, namely Sections 3 and 7 of Article 5. Sections 3(a) provides:

"In the event that the Employer absorbs the business of another private, contract or common carrier, or is a party to a merger of lines, the senior-

---

1. The National Master Freight Agreements commencing February 1, 1964 govern labor relations between the IBT and many trucking companies in the United States, including Roadway, Inc.

2. Although eight of the plaintiffs were discharged by Roadway because of their alleged participation in an unauthorized strike or work stoppage, two were rehired prior to the Joint Grievance Committee hearing and a third, Walters, was ordered rehired. All three, however, complain herein of loss of pay and other benefits which were not awarded them.

3. "Dovetailing" of employees is a term used in the trucking industry to refer to a merging of two separate seniority lists upon the transfer of employees of a company from one terminal to another. For all purposes except job selection, employees would retain their seniority under the National Master Freight Agreement. Article 5, Section 5(b)(2).

4. Although this contract covered the period of April 1, 1967 through March 31, 1970, by the terms thereof it remained in force and effect until a new one was negotiated on or about May 18, 1970.

ity of the employees absorbed or affected thereby shall be determined by mutual agreement between the Employer and the Unions involved."

"In the application of this provision the following general rules shall apply:

Merger, purchase, acquisition, sale, etc.

(1) If both carriers involved are solvent then the seniority lists of the two Companies should be dovetailed so as to create a Master Seniority List based upon total years of service with either Company. This is known as dovetailing in accordance with years of seniority.

In the application of this rule it is immaterial whether the transaction is called a merger, purchase, acquisition, sale, etc. It is also immaterial whether the transaction involves merely the purchase of stock of one corporation by another, with two separate corporations continuing in existence, and it is immaterial whether separate terminals of the Companies are physically merged or not, subject, however, to rules 4 and 5 below.

(2) If, in the type of transaction described above, one of the Companies is insolvent at the time of the transaction, then the employees of the insolvent Company will go to the bottom of the Master Seniority List. The test of whether a Company is solvent or insolvent is governed entirely by whether bankruptcy, receivership, composition for the benefit of creditors, reorganization, or similar proceedings are pending in the state of (sic) federal court. If such proceedings are pending, the Company is considered insolvent for the purpose of this rule."

Section 7 provides:

"The parties acknowledge that specific situations may arise which may not be covered by the rules set forth in this Article or in which the parties may feel that different treatment of the problems is necessary. In such situation, the Employer, the Unions involved, and the Area Multi-Conference or National Committees may mutually agree to such disposition of the seniority problem as in their judgment is appropriate under the circumstances. The Change of Operations Committee under the Local Supplements or the National Master Agreement shall have the authority to add to or to modify these rules in specific situations presented to them."

The defendant Roadway Express, Inc. (Roadway) is a common carrier by motor vehicle which at all times material transported general commodities over a network of regular and irregular routes in several states including Mississippi, Alabama, Louisiana, Tennessee, Texas and Georgia and from 1961 to August 18, 1969, discharged its motor carrier purposes and duties on regular routes from Atlanta to Dallas and Houston and return by operating "sleeper teams" which consisted of two drivers assigned to each vehicle with one operating the unit while the other slept in the cab on an alternating basis.

West Brothers, Inc. (West) was, during that time, authorized to operate as a motor common carrier of general commodities through a territory bounded generally by Birmingham, Alabama and Memphis, Tennessee on the north; Montgomery, Alabama on the east; New Orleans, Louisiana and Mobile, Alabama on the south; and Jackson, Mississippi on the west. Roadway routes connected with West's route at Memphis, Birmingham and Montgomery.

Because of West's financial problems, representatives of West and Roadway met for the first time in Jackson, Mississippi in 1965 to negotiate and discuss the acquisition of West by Roadway, and on June 28, 1968 Roadway filed an

application pursuant to 49 U.S.C. § 5 seeking authority from the ICC to control West through the purchase of its capital stock, together with certain of its terminal properties. On March 7, 1969, Roadway filed a separate emergency application with the ICC pursuant to 49 U.S.C. § 310a(b), seeking immediate temporary control of West through management because of the latter's desperate financial situation, which the ICC granted on March 20, 1969, authorizing Roadway to assume temporary control of West for a period not to exceed 180 days, which control was assumed on March 22, 1969. That authority was made permanent on January 15, 1970 by the further orders of the ICC. After acquiring the interstate operating authority and stock of West, Roadway amended the name of the corporation to Roadway Express of Mississippi, Inc., a wholly owned subsidiary of Roadway.

In June, 1969, Roadway decided to change its type of operation, to abandon its "sleeper teams" method of operation in favor of a "relay terminal" type, which consisted of the establishment of a relay terminal at Meridian, Mississippi permitting commodities to be transferred from points in the eastern United States through Atlanta to Meridian where Roadway relay drivers, domiciled at the Meridian terminal, took the freight and transported it to Dallas and Houston, Texas. In June, 1969, Roadway applied to a Change of Operations Committee, a subcommittee of the Southern States Multi-Conference Committee, established pursuant to the National Master Freight Agreement, for permission to effect the above change and to transfer 39 of its over-the-road drivers from other terminals to the Meridian terminal. Roadway proposed, and the COC announced to the industry, that with the advent of the relay terminal method of operation, all drivers transferred to the relay terminal would operate on "terminal seniority". The over-the-road drivers who were to be transferred by Roadway to the new relay terminal would be given seniority there commensurate with their date of employment with Roadway as a "road driver". After the change of operations was granted, Roadway published bulletins and disclosed its intent to open the relay terminal in Meridian and nine other cities, announcing that its drivers domiciled at Meridian would transport freight-loaded trailers from Meridian to Dallas and Houston and return and in some instances would also transport freight to terminals in eastern Tennessee and return. Following the COC approval of its request in June, Roadway solicited its drivers at other terminals to submit bids for transfers to the ten new relay terminals, one of which was Meridian. Although the evidence is in conflict, this Court finds that no responsible official of Roadway assured any of these drivers who were asked to bid for transfer to Meridian that if Roadway and West were ever merged it would be at least three to five years in the future, that the terminal seniority of Roadway drivers would always be greater than that of other drivers including West Brothers, and that no West Brothers drivers would be transferred into the Meridian terminal of Roadway.

A total of thirty-eight Roadway over-the-road drivers accepted transfers from various terminals in the Roadway system to the Meridian terminal effective August 18, 1969 and were given terminal seniority commensurate with their service with Roadway as over-the-road drivers. Between August 18, 1969 and February 6, 1970, Roadway hired fifteen additional drivers with no previous seniority who were given terminal seniority at the Meridian terminal. Shortly after acquiring West Brothers, Roadway, in January, 1970, decided to transfer twenty-nine West Brothers (then Roadway Express, Inc. of Mississippi) drivers to its Meridian relay terminal and thus applied to the COC for permission to do so because, despite the fact that the decision of where to domicile drivers and equipment is an inherent management right, any transfers or

changes in connection with the exercise of that right must, pursuant to the collective bargaining agreement, be approved by the duly appointed COC (See Exhibit P–78, Article 8, Page 45) which consisted of an equal number of union and company officials not involved in the particular change. This committee met in Miami, Florida on January 14, 1970 and its meeting was attended by Joe Varble, Manager of Labor Relations of Roadway for the Southern Conference Area including Mississippi; W. C. Smith, then President of the defendant Local 891; presidents of other locals of the defendant International; and two members of the plaintiff class, W. W. Smith and Paul Adair, the latter being the defendant local's union steward. Roadway requested the COC to determine the question of seniority of its employees at the Meridian relay terminal if the transfer was approved. Before deciding that question, Smith and Adair, both domiciled at the Meridian terminal, were given the opportunity to state the reasons for their contention that all West Brothers drivers to be domiciled at Meridian should be stripped of their job-bidding and lay-off seniority and placed at the bottom of the Meridian over-the-road seniority roster (Exhibit C to Exhibit P–1). W. C. Smith fully presented the positions or contentions of the plaintiffs, all of whom were members of Local 891, as well as those of the West Brothers drivers who were to be transferred, six of whom were members of Local 891, and in no manner acted arbitrarily, discriminatorily or capriciously in doing so. (*Ibid;* Exhibit P–9, pages 33–34). Following this hearing, the COC rendered a decision "dovetailing" the job bidding and layoff seniority of the plaintiffs, Roadway over-the-road drivers at Meridian, with previously existing job bidding and lay-off seniority of West Brothers over-the-road drivers who were being assigned to the Meridian terminal (Exhibit 6 to Exhibit P–1), who would thereafter enjoy terminal seniority. Thus, the transferring West Brothers drivers were afforded the same treatment and rights as were the plaintiffs herein when they transferred to the Meridian relay terminal by giving them seniority based on their date of employment as over-the-road drivers by West Brothers.

On February 6, 1970, the twenty-nine West Brothers drivers were transferred to the defendants' Meridian terminal and their seniority was dovetailed with that of the plaintiffs on the posted seniority list. This resulted in almost all of the plaintiffs being reduced in seniority, and a grievance was filed on March 10, 1970 by one of them, Earl Byers, protesting the "dovetailing" decision of the COC. This grievance was processed and heard in Jacksonville, Florida on May 6, 1970 by the Southern States Multi-Conference Committee pursuant to the grievance procedure outlined in the Collective Bargaining Agreement (Exhibit P–78, Article 7, page 39). Byers appeared before that committee, which was composed of an equal number of union and employer representatives none of whom were members of the involved union or company. W. C. Smith, representing Local 891, and Varble and Byers also were present during this lengthy hearing which resulted in the denial of the protest. (Exhibit 7A to P–1). The decision of this committee is final and binding upon the parties as provided in Article 8(a)(1), page 42 of the Collective Bargaining Agreement. (Exhibit P–78).

Subsequently, on September 12, 1970, seven additional drivers, six of whom were West Brothers drivers and one of whom was a Roadway driver, all working out of the Birmingham terminal, were transferred into Roadway's Meridian terminal pursuant to permission of the COC and their seniority was likewise dovetailed into the seniority of the drivers already domiciled there. On September 12, 1970, one of the plaintiffs, W. T. Bullock, Jr., filed a grievance protesting this decision. This also was denied by the Multi-Conference Committee.

■■ The plaintiffs' attack on the actions or decisions of the COC as affirmed by the Multi-Conference Committee, is as follows: (1) since West Brothers (Roadway Express, Inc. of Mississippi) was insolvent at the time that it was acquired by the defendant Roadway, in accordance with Article 5, Section 3(a)(2), pages 24–25, the employees of the insolvent company West were required to go to the bottom of the Master Seniority List; (2) they were not afforded an opportunity to be heard before the COC and presumably the Multi-Conference Committee; (3) the defendants Local and International, their exclusive bargaining agents, did not represent them fairly before the Committees, but actively conspired with the defendant companies by supporting or at least not resisting the decision to permit dovetailing and otherwise acted in bad faith and arbitrarily; and (4) that they were deceived by the defendant Roadway who had assured them previously that their terminal seniority would not be affected by the subsequent transfer of any West Brothers drivers into the Meridian terminal. The last contention has already been disposed of by virtue of this Court's finding that no such assurance or representation was made by Roadway through any of its officials, representatives or agents. In any event, even if this fact had been established to the satisfaction of the Court, Article 5, Section 7 of Exhibit P–78, nevertheless justified and authorized the permitted dovetailing.

■ The plaintiffs failed to prove the charged conspiracy and collusion between the defendant unions and companies, and they were afforded the opportunity to fully present their opposition to dovetailing, which they did through their members who were present and were heard from at both committee hearings as well as the presentation of both sides of the argument by W. C. Smith, President of Local 891. See *Humphrey v. Moore,* 375 U.S. 335 at 350–351, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). Certainly the undoubted broad authority of the Local as exclusive bargaining agent in the negotiation and administration of the collective bargaining contract is accompanied by the responsibility of equal scope, that is, the responsibility and duty of fair representation. By its election it became the agent of all employees, charged with the responsibility of representing their interests fairly and impartially. Its obligation to represent all of its members required it to make an honest effort to serve the interests of all without hostility to any, and its powers are subject to complete good faith and honesty of purpose in the exercise of its discretion. As did the Supreme Court in *Humphrey v. Moore,* 375 U.S. 335, 345–350, 84 S.Ct. 363, 11 L.Ed.2d 370, this Court finds in the evidence herein insufficient proof of dishonesty or intentional misleading on the part of the defendant Local and is not ready to find a breach of the Collective Bargaining Agent's duty of fair representation in taking a good faith position contrary to that of some individuals whom it represents nor in supporting the position of one group of employees against that of another. As stated by the Supreme Court, " . . . [t]he mere existence of such differences does not make them invalid [and] a wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." It should not " . . . be neutralized when the issue is chiefly between two sets of employees . . . " inasmuch as the " . . . conflict between employees represented by the same union is a recurring fact [, and] to remove or gag the union in those cases would surely weaken the collective bargaining and grievance processes." As the Court further noted, "[i]nevitably the absorbtion would hurt someone. By choosing to integrate seniority lists based upon length of service at either company, the union acted upon wholly relevant con-

siderations, not upon capricious or arbitrary factors . . . ." The evidence in the case sub judice shows no breach by the local union of its duty of fair representation. The defendant International was not the collective bargaining agent of the plaintiffs and thus had no duty of fair representation which could be breached. It merely participated in negotiating the Collective Bargaining Agreement in which the defendant Local is designated the "exclusive bargaining agency."

█ The answer to the insolvency argument of the plaintiffs is found in the second sentence of Section 3(a)(2), at p. 25 of Exhibit P–78 which reads: . . . "The test of whether a company is solvent or insolvent is governed entirely by whether bankruptcy, receivership, composition for the benefit of creditors, reorganization, or similar proceedings are pending in the state of (sic) federal court. If such proceedings are pending, the Company is considered insolvent for the purpose of this rule." Although at the time West Brothers was acquired by Roadway it was in poor financial condition and operating at a loss, nevertheless the record is devoid of any evidence that any of the foregoing proceedings were pending against it in state or federal court, and therefore this Court finds that the plaintiffs have failed to prove the insolvency of West Brothers at that time.

█ The United States Supreme Court has held that decisions of Committees under the National Master Agreement and applicable Area Supplements are to be given the final and binding effects of the decisions of other neutral arbitrators. *General Drivers, etc., Local 89, and International Brotherhood of Teamsters v. Riss & Co., Inc.,* 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963). If an arbitration award or decision is in issue, no court is to decide the merits of the decision but is restricted to deciding only two questions: (1) whether the award is based upon the arbitral body's interpretation of the Collective Bargaining Agreement in effect; and (2) whether the particular grievance is "arbitrable" or subject to arbitration under the parties' agreement. *United Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). See also *Gulf States Telephone Co. v. Local 1692,* 416 F.2d 198 (5th Cir. 1969) and cases cited therein. It is established beyond cavil that seniority claims and grievances are arbitrable under the applicable Collective Bargaining Agreement, and the COC and Multi-Conference Committee relied upon this agreement in resolving the seniority issues herein.

█ Only where it is proved that the decision of an arbitrator has been obtained by fraud or by virtue of breach of a union's duty of fair representation can a Court properly decline to honor the award or decision. *Humphrey v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); *Price v. International Brotherhood of Teamsters et al.,* 457 F.2d 605 (3rd Cir. 1972). The power of the Multi-Conference Committee to decide seniority questions is unquestionable, and actually, Article 5, Section 3 dictated the integration or dovetailing of seniority as was done herein. This certainly resulted in an equitable solution to the conflicting interests which arise in the wake of a purchase or absorption such as took place herein.

As previously stated, the plaintiffs were fairly represented before the two committees by their defendant Local which was not guilty of any dishonesty, bad faith or arbitrariness in representing them before the COC or the Multi-Conference Committee.

█ In conclusion, plaintiffs have not proved their challenge to the dovetailing of seniority. Neither the

parties nor the Committees exceeded their power under the contract and there was no fraud or breach of duty by the exclusive bargaining agent. The decisions of the Committees, reached after proceedings adequate under the agreement, is final and binding upon the parties just as the contract says it is, and the national labor policy favoring final and binding arbitration of seniority and discharge disputes must be followed. *Boys Markets, Inc. v. Retail Clerk's Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); *Humphrey v. Moore, supra; General, etc., Union Drivers v. Riss & Co.,* 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963).

## THE DISCHARGES

On April 10, 11 and 12 of 1970, the employees of Roadway at its Meridian terminal engaged in a wildcat strike or unauthorized work stoppage protesting the dovetailing of their seniority with the West Brothers drivers who were transferred into the Meridian terminal. Eight of the plaintiff class members were discharged by Roadway pursuant to its right and authority to do so contained in Article 42, Section 2, pages 100–101 of the Collective Bargaining Agreement (Exhibit P–78), which provides in part that " . . . after the first twenty-four (24) hour period of such [unauthorized work] stoppage and if such stoppage continues, however, the Employer shall have the sole and complete right to immediately discharge any employee participating in any unauthorized strike, slowdown, walkout or any other cessation of work, and such employee shall not be entitled to or have any recourse to any other provision of this Agreement . . . . "

The eight plaintiffs who were discharged were Fiveash, Peche, Vinyard, McCullough, Franklin, Walters, Lanterman and Clark. Most of these plaintiffs testified before the Court during this trial and all denied that there was a work stoppage or that they were personally involved in it. However, it was elicited on cross-examination that "something unusual was going on." Walters admitted in his testimony that if he had been called to go out on a trip during the period of April 10–12 he "would not have done so for fear of his life and what would possibly happen on the road in view of the fact that other drivers were not driving." Franklin admitted that he was sitting or standing for a long period of the time in front of the terminal with other drivers and that his purpose there was "to exercise his constitutional right to protest his seniority." The Union's vice president and business agent, Smith and Craft, did not go to the Meridian terminal during that time because, as Smith testified, he was aware of the wildcat strike and he could not effectively represent the plaintiffs in a grievance procedure if he personally witnessed what was taking place. Craft, pursuant to the orders of Smith, was in constant communication with Local 891's steward, Adair, a member of the plaintiffs class, and Adair told him there was a strike going on and picket lines had been thrown up. Pursuant to the instructions of Smith, he instructed Adair to remove the picket lines.

The evidence proves that there was an unauthorized work stoppage or strike during the time in question and that Roadway was clearly within its contractural right in discharging the five plaintiffs even if they had proved that the local union did not fairly represent them before the Grievance Committee. In summary, Roadway did not breach the terms of the Collective Bargaining Agreement in discharging the plaintiffs, and their claims of wrongful discharge must be denied.

Turning now to the question of whether the defendant International was a bargaining agent for the plaintiffs, which it has consistently denied, the plaintiffs have completely

failed to prove or establish an agency status of the defendant Local. The most that the evidence shows is that the International participated in effectuating the Collective Bargaining Agreement but did not undertake to represent the plaintiffs as their bargaining agent with reference thereto, and more specifically, in connection with the grievances filed subsequent to their discharge. A local union is not an agent of its International, and an International cannot be held per se responsible for and identified with the conduct of local unions. *Barefoot v. Teamsters*, 424 F.2d 1001 (10th Cir.) cert. den. 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed.2d 257 (1971). Where the International is not the exclusive collective bargaining representative of the plaintiffs, there is no duty of fair representation or breach thereof. *Encina v. Tony Lama Co.*, 316 F.Supp. 239, 245 (W.D.Tex.1970), *aff'd* 448 F.2d 1264 (5th Cir. 1971). Thus, the plaintiffs have failed to prove a case against the IBT.

■ The plaintiffs have also failed to prove that Local 891 breached its duty of fair representation in processing their discharged grievances. After he was informed of the discharge of the eight plaintiffs, W. C. Smith, then president of Local 891, instructed the Local's vice president and business agent, Craft, to go to Meridian and contact the discharged employees, inform them they were in serious trouble and obtain necessary information from them. He also told Craft to write down everything that was said by the subject drivers and bring all of the information back to him, but Craft was unable to obtain much information from them. The grievances were filed on behalf of the eight discharged employees and their grievance hearing was slated to be heard in Jacksonville, Florida. All of the involved plaintiffs with the exception of Fiveash attend the Grievance Committee hearing, and by their ad-

missions herein presented all evidence that they wished to present. At Jacksonville, prior to the Committee hearing, Smith visited the involved plaintiffs who were present in an effort to obtain as much information as he could in order to present it to the Committee, but got useful and helpful information only from one of them who furnished him a driver's log book. At the hearing, Smith presented all the information given to him by all of the plaintiffs who had filed grievances after having previously informed them by certified mail, return receipt requested, of the time and place of the meeting of the Multi-State Grievance Committee, namely Tuesday, May 5, 1970 at the Thunderbird Motel in Jacksonville, Florida. This notice was dated April 28, 1970 and mailed that day. All of the plaintiffs received their notice with the exception of Fiveash to whom it was addressed to P.O. Box 1102 in Meridian, Mississippi, the address which he had put down on his grievance which he filed. Fiveash, however, had become a member of the police department in another section of Florida, and although he knew of this hearing, having been informed of it by Peche some two days prior thereto, he was unable to attend because he was a witness in a criminal trial which was to be held in Tallahassee. Fiveash testified that he talked on the telephone to his co-plaintiff, Peche, who had informed him of the hearing and that he had instructed Peche to get somebody else to represent him. Peche contacted Smith, the Local's then president, and informed him of Fiveash's defense or contentions which Smith brought to the attention of the Grievance Committee during the hearing.

Prior to the Committee hearing, Smith was successful in having Lanterman and Clark speak to Varble and they were reinstated by Roadway without pay. In addition, Walters was ordered reinstated by the Committee without pay and with loss of some bene-

fits, but the grievances filed by the other five plaintiffs were rejected or denied.

The plaintiffs were accorded full and fair hearings before the Joint Grievance Committee as evidenced by their testimony and the other evidence of record herein, and they have failed to prove that the defendant, Local 891, failed to afford them fair representation before the Grievance Committee or that it acted in bad faith, arbitrarily or maliciously or that it colluded with anyone, including the defendant Roadway, to deprive them of a full and fair hearing before this impartial Committee established pursuant to the Collective Bargaining Agreement. Therefore, they failed to prove their case against the defendant Local 891 and cannot prevail. See *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Humphrey v. Moore, supra; Bazarte v. United Transportation Union*, 429 F.2d 868 (3rd Cir. 1970); *Encina v. Tony Lama Co., supra* at 243–44; *Lomax v. Armstrong Cork Co.*, 433 F.2d 1277 (5th Cir. 1970).

### CONCLUSION

This Court has jurisdiction of this action under Section 301 of the LMRA and this case is one controlled by federal law.

The complaints of the plaintiffs were arbitrable under the Collective Bargaining Agreement in question and the Committees that decided these questions did so in the prescribed manner after affording the plaintiffs a full and fair hearing thereon and representation in connection therewith.

The plaintiffs have failed to prove any bad faith, dishonesty or collusion between or on the part of any of the defendants herein and more specifically have failed to prove that the defendant Local Union did not fairly represent them before all of the Committees in question or that they were denied any right afforded them by the Collective Bargaining Agreement or the United States Constitution or laws or public policy of the United States.

Therefore, this Court may not inquire into the merits of this matter and must honor the decisions of the appropriate Committees. Any other view would only result in a proliferation of litigation of the sort involved herein and would undermine the national labor policy favoring final and binding arbitration under contract grievance procedures inasmuch as there is no substantial evidence of fraud, deceitful action or dishonest conduct on the part of any of the defendants.

Therefore, the Complaint of the plaintiffs must be and it is hereby dismissed with prejudice as against all defendants and all parties are to bear their own costs, including attorneys' fees.

A judgment conforming with the foregoing findings of fact and conclusions of law shall be presented to this Court in the form and within the time prescribed at Biloxi, Mississippi.