Edwin S. BALDWIN, Plaintiff,

v.

POUGHKEEPSIE NEWSPAPERS, INC., doing business as Poughkeepsie Journal et al., Defendants.

No. 74 Civ. 79.

United States District Court, S. D. New York.

March 31, 1976.

See also, D.C., 410 F.Supp. 645.

Hugh S. Silberstein, Barrett Hess, Rochester, N. Y., for plaintiff.

Robert E. Ferguson, Poughkeepsie, N. Y., for defendant Poughkeepsie Newspapers, Inc.

Ritter & Hankin, Poughkeepsie, N. Y., for defendants ITU and ITU Local 315; Leo M. Ritter, Poughkeepsie, N. Y., of counsel.

WARD, District Judge.

Defendant International Typographical Union ("the Union") renews its earlier motion for an order, pursuant to Rule 12(b), Fed.R.Civ.P., dismissing the action as to it on the grounds that it has not been properly served in New York and that venue is improperly laid in this district. For the reasons hereinafter stated, the motion is granted.

Plaintiff instituted this action pursuant to § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, alleging that his employer, Poughkeepsie Newspapers, Inc., the Union, and International Typographical Union Local # 315 ("the Local") deprived him of his rights under a collective bargaining

agreement and that the defendant labor organizations breached their duty of fair representation in processing his grievance. Defendant Union is an unincorporated association with its principal office in Colorado Springs, Colorado. Service of process was effected upon the Union's secretary-treasurer in Colorado.

Defendant Union earlier challenged both service and venue in this action. Its motion to dismiss was denied by an order dated January 22, 1975. At that time, the Court stated that it lacked sufficient information to enable it to come to a determination and denied the motion without prejudice to its renewal after the completion of discovery. Discovery on this issue having been completed and an expanded record having been compiled, the motion has now been renewed.

■ First, the Court will address the question of service. The Union does not question the mechanics of the service in Colorado. Its sole contention is that neither § 301(d) nor the Federal Rules of Civil Procedure authorize service outside the territorial limits of the State of New York and that no valid service was effected in New York. Plaintiff advances two arguments in support of the validity of service upon the Union. First, he argues the Local is a wholly controlled arm of the Union and, therefore, service upon the Local, as agent for the Union, was service upon the Union in New York. Second, he argues that the service in Colorado is valid under the Federal Rules by virtue of the New York State long-arm statute, N.Y. CPLR §§ 302, 313 (McKinney's 1972).

In its prior determination, this Court concluded that service outside the State of New York is authorized by Rule 4(e), Fed.R.Civ.P., and the New York "long-arm" statute. Rule 4(e) acts as a borrowing statute by providing that

Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons . . . upon a party not an inhabitant of or found within the state

. . ., service may . . . be made under the circumstances and in the manner prescribed in the statute or rule.

It cannot be disputed that by this federal rule extraterritorial service is authorized in any action in this Court whenever a New York statute so provides. This rule applies to all civil actions without regard to the basis for federal jurisdiction. *See United States v. Montreal Trust Co.*, 35 F.R.D. 216 (S.D.N.Y.1964); Rule 1, Fed.R.Civ.P. There is nothing in § 301(d) which would preclude application of this provision for extraterritorial service of process. In *Central Operating Co. v. Utility Workers of America*, 491 F.2d 245 (4th Cir. 1974), the court held that in a suit under § 301 state provisions for extraterritorial service, as part of their long-arm statutes, are applicable by virtue of Rule 4(e). *Id.* at 250.

Therefore, we turn to the New York "long-arm" statute. N.Y. CPLR § 302(a)(1) provides:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary . . . who in person or through an agent:

(1) transacts any business within the state; . . .

N.Y. CPLR § 313 provides for service outside the state whenever a person is subject to the jurisdiction of the courts of the state by virtue of § 302.

The Union, relying on state law, argues strenuously that these provisions do not apply to an unincorporated labor association. In fact, state law expressly makes these provisions applicable. New York General Associations Law § 13 (McKinney's Supp.1972) provides that service upon the designated labor union officials shall be made in the same manner as provided for service upon a natural person.

■ The question then becomes whether the Union is transacting business in New York within the meaning of

the statute. If so, a further question remains as to whether the claim against the defendant arises therefrom.

Plaintiff's counsel has misread this Court's prior decision as holding that long-arm jurisdiction over the Union exists. Indeed, no such determination was made. Instead, the Court has waited to examine the presentations of the parties.

It is urged by plaintiff's counsel, "that the court ought not to apply the 'doing business' test, but ought to apply the test of minimal contacts, or 'transacting business' test." He enumerates the following evidence that the Union has transacted business within New York: the maintenance of three New York bank accounts within the past five years, the designation of an "advertising representative" to deal with the Typographical Journal, and the visits of Union representatives to the State.

Even were the Court to conclude that these activities constituted the transaction of business, a question which need not be reached, they would not suffice as the predicate for long-arm jurisdiction. For as N.Y. CPLR § 302 clearly indicates not only must the potential defendant have transacted business within New York, but the cause of action against it must arise from that transaction. The complaint darkly alleges conspiracy but the gravamen of the claim against the Union is breach of its duty of fair representation. The facts center around plaintiff's transfer to a night shift, his refusal, allegedly on medical grounds, to accept the transfer and his ultimate termination or effective resignation. This scenario was purportedly accompanied by a failure on the part of the Union and the Local to press his grievance.

This Court fails to see the nexus between the claim based upon these facts and the business activities which plaintiff's counsel has presented. Plaintiff's claim is simply unrelated to the Union's bank accounts, connections with a trade publication, or the enumerated visits of Union representatives.

■ Although the Union cannot be reached through § 302 on the basis of its independent acts in New York, plaintiff is not thereby precluded from reliance upon long-arm jurisdiction. The New York statute expressly provides that the requisite transaction of business may be accomplished, "in person or through an agent." Accordingly, plaintiff's contention that the Local is a mere agent of the Union must be examined.

Plaintiff's counsel characterizes the Local as a puppet and a slave. But nowhere does he support these assertions with clear proof that the Local is not an autonomous body which acted independently in its treatment of plaintiff. As the Court in *Walters v. Roadway Express Inc.*, 400 F.Supp. 6, 16 (S.D.Miss. 1975) indicated,

"[a] local union is not an agent of its International, and an International cannot be held per se responsible for and identified with the conduct of local unions. *Barefoot v. Teamsters*, 424 F.2d 1001 (10th Cir.) cert. den. 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed.2d 257 (1971)."

Baldwin does not allege facts indicating that the International directed the Local in its conduct. As described by the parties, the events on which this action is based do not begin to suggest that the Local was a marionette, with the Union off-stage pulling the strings.

The complaint alleges:

That from the letter of John H. Sauter, field examiner of the National Labor Relations Board, it would appear that the defendant International Union was a party to the conspiracy to deprive the plaintiff of the collective pargaining duty of fair representation. [sic].

Examination of a copy of Mr. Sauter's letter, attached to the pleadings, reveals the phrase, "the President [of the Local] has discussed the matter with I.T.U. headquarters. . . ."

The Local's then President Walter V. Bogdan describes the following exchange:

Your deponent then called the contracts division of the International Ty-

pographical Union in Colorado Springs, Colorado for information and spoke to one Mr. L. Blankenship. After explaining the situation, it was Mr. Blankenship's opinion that plaintiff could claim priority only if he was competent to claim the job of a man with lower priority, and that Mr. Baldwin should cover his situation at night.

Your deponent then called Mr. Baldwin and relayed to him the sum and substance of the conversation with Mr. Blankenship.

This opinion by a representative of the Union in Colorado, elicited by the President of the Local in New York, hardly serves to establish an agency relationship.

Plaintiff points to the Constitution and Bylaws of the Union and the Charter of the Local to support his agency argument. Faced with a similar contention the Court in *Barefoot, supra* at 1004 noted:

In *International Bro. of Teamsters, Chauffeurs, Warehousemen, and Helpers of America v. United States*, 275 F.2d 610, the Fourth Circuit held that these provisions of the labor constitution created a relationship of principal and agent between International and the Local within the meaning of section 185(c): " * * * the local is no autonomous body, but [is] a subdivision of International subject to International's control." 275 F.2d at 614. However, the local union in *Teamsters* was in trusteeship and therefore under the direct and immediate control of International. Indeed, the official of the local found by the court to have been acting as the agent of International had been expressly designated as such by the trustee, an official of International. Consequently, it is doubtful that the court meant to base jurisdiction over the national organization solely upon provisions of the union's own rules when it was plainly unnecessary to do so. In any event, the autonomy of the national union organizations, compromised only when statutory and applicable common law

rules of agency so indicate, has been long recognized. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 736, 86 S.Ct. 1130, 16 L.Ed.2d 218; *United Brotherhood of Carpenters and Joiners of America v. United States*, 330 U.S. 395, 403, 67 S.Ct. 775, 91 L.Ed. 973. Section 185(c) itself, setting out the criteria for the assertion of venue-jurisdiction over a labor organization, necessarily presupposes the autonomy of a national labor organization; to interpret the statute otherwise would negate the necessity of its existence.

Viewing the facts most favorably to plaintiff and taking into consideration the provisions of the Constitution and other documents, this Court finds that plaintiff has not demonstrated an agency relationship between the Union and the Local sufficient to invoke long-arm jurisdiction over the Union.

Since plaintiff has failed to establish that the Local acted as the Union's agent in breaching its duty to fairly represent him, and since plaintiff's claim does not arise from the independent New York contacts of the Union, long-arm jurisdiction under N.Y. CPLR § 302 does not lie. Consequently, the Union's motion to set aside service of process is granted.

Inasmuch as the Court has granted the Union's motion to dismiss on the basis of its first branch, the challenge to service of process, the second branch, venue, need not be reached. However, the Court notes with approval the language of the Tenth Circuit in *Barefoot, supra* at 1005 (emphasis added):

Once a national labor organization has manifested its presence in a local labor dispute for the purpose of influencing or dictating union policy, assertion of venue over that organization is clearly contemplated by section 185(c) [29 U.S.C. § 185(c), the applicable venue statute relating to actions by or against labor organizations in the U.S. District Courts] and cannot be evaded by reliance upon internal rules limiting

the agent's authority. Conversely, *when as in the instant case, a labor organization's role in a dispute has been responsive rather than affirmative and conducted outside of the district, then its liability to suit in that district is clearly not contemplated by section 185(c).* As a national supervisory organization, it is inevitable that the enunciations of policy, advice and instructions given by International to local affiliates will, when implemented, have an effect on local labor disputes. However, such an effect cannot be equated with the representing or acting for employee members by a duly authorized agent within the district, the criteria established by section 185(c).

The telephone conversation between the president of the Local in New York, and an employee of the Union in Colorado, initiated by the former, placed the Union in a responsive role in this dispute. Serious doubts are therefore cast on venue of the action here.

Moreover, the Court questions whether plaintiff can effectively state a claim for breach of the duty of fair representation against the Union. Allegations of a breach of a duty necessarily presuppose the existence of a duty. According to the terms of the collective bargaining agreement, the Local is the exclusive bargaining agent for the Local members; consequently the Local alone bears the duty of fair representation and alone can be held accountable for its breach. As indicated in *Walters, supra* at 16:

> Where the International is not the exclusive collective bargaining representative of the plaintiffs, there is no duty of fair representation or breach thereof. *Encina v. Tony Lama Co.,* 316 F.Supp. 239, 245 (W.D.Tex.1970), *aff'd* 448 F.2d 1264 (5th Cir. 1971).

Furthermore, even if the Union did owe such a duty the record does not contain facts pointing to a breach. The test has recently been enunciated again. The Sixth Circuit in *Ruzicka v. General Motors Corp.,* 523 F.2d 306, 309–310 (6th Cir. 1975), stated:

> We agree with the Fourth Circuit's analysis of the three-pronged standard established in *Vaca* [*v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)] for determining whether a union has unfairly represented one of its members:
>
>> A union must conform its behavior to each of these three separate standards. First, it must treat all factions and segments of its membership without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of its individual members must be exercised in complete good faith and honesty. Finally, the union must avoid arbitrary conduct. Each of these requirements represents a distinct and separate obligation, the breach of which may constitute the basis for civil action.
>
> *Griffin v. International Union of United Automobile Workers,* 469 F.2d 181, 183 (4th Cir. 1974). *See also De Arroyo v. Sindicato De Trabaiadores Packinghouse, AFL–CIO,* 452 F.2d 281 (1st Cir.) *cert. denied,* 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970).

The Union's conduct does not appear to have been arbitrary, discriminatory, nor characterized by bad faith.

In any event, for the reasons hereinabove stated, the Court concludes that service of process upon the Union must be set aside. Accordingly, the Union's motion to dismiss is granted and the action dismissed as to it.

It is so ordered.