**Robert BORDIGA, et al., Plaintiffs,**

v.

**The DIRECTORS GUILD OF AMERICA, et al., Defendants.**

**No. 94 Civ. 1606 (AGS).**

United States District Court, S.D. New York.

Jan. 19, 1995.

---

458

Law Offices of Leonard N. Flamm, New York City, for plaintiffs.

Shereff, Friedman, Hoffman & Goodman, New York City, and Jeffer, Mangels, Butler & Marmaro, Los Angeles, CA, for individually named defendants and the Directors Guild of America–Producers Pension Trust.

Vladeck, Waldman, Elias & Engelhard, New York City, Taylor, Roth, Bush & Geffner, Burbank, CA, for defendant Directors Guild of America, Inc.

## OPINION AND ORDER

SCHWARTZ, District Judge:

This is a putative class action pursuant to Rule 23 of the Federal Rules of Civil Procedure brought by members of The Directors' Guild of America ("DGA") against the DGA, the DGA-appointed Trustees of the DGA–Producers Pension Benefit Plan ("the Plan"), and the DGA–Producers Pension Trust. Plaintiffs claim that the union breached its duty of fair representation to its members under Section 301 of the Labor Management Relations Act ("LMRA"). Defendants move pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure to dismiss the present action. In the alternative, defendants move pursuant to 28 U.S.C. § 1404(a) to transfer this action to the Central District of California. For the reasons stated below, the defendants' motion to transfer is granted.

### FACTS

The plaintiff class is composed of members of the DGA in good standing as of December 31, 1993. All of the class members were eligible at that time for participation in the Plan and either had not yet reached retirement age and/or had reached retirement age but had not retired and/or taken retirement benefits due to them under the Plan. The thirteen named plaintiffs include both non-vested and vested members of the Plan. Four named plaintiffs reside in New York, and six reside in California. The remaining three live in Illinois, Connecticut, and Maryland. See Complaint at 6–18, 20.

The DGA is a non-profit membership organization, with its principal office in Los Angeles, California and a small office of approximately twelve staff members in New York. See Complaint at 2; Gumpel Affidavit at 2, 8–9. The Plan itself was established in May, 1960 pursuant to a collectively-bargained, joint-trusteed labor management trust. See Complaint at 2; Rowlett Affidavit at 3. The DGA–Producers Pension Trust administers

the Plan and is governed by a Board of Trustees composed equally of representatives of the DGA and of the Producers. See Complaint at 3; Rowlett Affidavit at 4. The DGA-appointed Trustees of the Plan hold various positions in the DGA and serve as the DGA's named representatives on the Pension Trust's Board of Trustees. See Complaint at 5.

In September and December 1993 at meetings held in Los Angeles, California, the Board of Trustees of the DGA–Producers Pension Trust voted to adopt changes to the Plan. See Complaint at 23–24; Rowlett Affidavit at 4. Having been advised to do so by the leadership of the DGA, the DGA-appointed Trustees voted in favor of the changes. See Complaint at 26. Plaintiffs claim that the DGA's support and the Trustees' subsequent vote in favor of the changes reflected a "reckless disregard" for the impact the changes would have on a "substantial majority of the DGA membership-at-large." See Complaint at 27. They claim further that the approved changes were in "derogation of proper procedures" and unauthorized according to the DGA's Constitution and By–Laws. See Complaint at 32.

### DISCUSSION

#### Venue and jurisdiction over the DGA

Analysis of defendants' present motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) (lack of jurisdiction over the person) and 12(b)(3) (improper venue) begins with the interpretation to be given to Section 301(c) of the LMRA.[1] Plaintiffs contend that 301(c) establishes venue and jurisdiction over the defendants in LMRA actions in the federal district courts. Defendant argues that 301(c)'s grant of venue does not apply in this action and that "jurisdiction" in 301(c) refers to subject-matter jurisdiction. The Second Circuit's decision in *White Motor Corp. v. International Union,* in which the Court of Appeals interpreted 301(c) in rela-

---

1. Section 301(c) reads as follows: For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which

tion to 301(a)[2], resolves this issue in favor of plaintiffs. 491 F.2d 189 (2nd Cir.1974).

■ The Court in *White* held that 301(a) is a venue provision which grants venue to the federal courts in cases in which the court exercises personal jurisdiction over the parties. *White,* 491 F.2d at 191. The Court in *White* stated further that 301(c) delineates the circumstances under which the district court has personal jurisdiction over a labor organization, e.g. the DGA. *Id. See infra.* Section 301(c), thus, grants personal jurisdiction over a labor organization under certain conditions[3], and when read in conjunction with 301(a), the statute provides venue in federal courts for LMRA actions.

■ Under the foregoing interpretation of LMRA § 301, this court has jurisdiction over the DGA. First, the DGA's New York office provides sufficient evidence that "its duly authorized officers or agents are engaged in representing or acting for employee members," as 301(c) requires. LMRA § 301(c). Second, irrespective of DGA's claim that the events giving rise to this claim took place in California, *White* clearly establishes that § 301 lays venue in this Court for plaintiffs' LMRA claim. We now turn to the issue of this Court's authority to exercise personal jurisdiction over the DGA-appointed Trustees and the Pension Trust.

*Personal Jurisdiction over the DGA-appointed Trustees and the Pension Trust*

The issue of this Court's personal jurisdiction over the DGA-appointed Trustees and the Pension Trust turns, as a threshold matter, on whether they constitute "labor organizations" for the purposes of § 301. The

Sixth Circuit in *Stevens v. Employer–Teamsters Joint Council,* relying on *Rehmar v. Smith,* 555 F.2d 1362 (9th Cir.1977), held that 1) "collectively bargained pension plans are 'contracts' for the purposes of Section 301." and 2) participants in a collectively bargained pension plan can maintain LMRA actions against a union-administered pension fund and its trustees. 979 F.2d 444, 457 (6th Cir.1992) (citations omitted).

*Stevens* suggests, therefore, that the Pension Trust and the DGA-appointed Trustees are "labor organization[s]" for purposes of Section 301. *Stevens,* 979 F.2d at 459. Such an interpretation provides two theories under which this Court may exercise personal jurisdiction over the Pension Trust and the DGA-appointed Trustees.[4] First, we exercise personal jurisdiction if the Pension Trust and the Trustees "maintain ... [their] principal office" or have "duly authorized officers or agents ... engaged in representing or acting for employee members" in New York. LMRA § 301(c). Second, we exercise personal jurisdiction if the Pension Trust and the Trustees comprise part of a larger "labor organization", i.e. the DGA. *Id.* If the latter circumstance obtains, proper service upon the DGA gives this Court personal jurisdiction over the Pension Trust and the Trustees.

On this issue, we observe that, unlike the DGA, the Pension Trust does not maintain an office in New York. *See* Rowlett Affidavit at 4–5. Whether the Pension Trust and the DGA-appointed Trustees have contacts with New York that would constitute their "officers or agents ... representing or acting for employee members" in New York presents a

---

its duly authorized officers or agents are engaged in representing or acting for employee members.

**2.** Section 301(a) reads as follows: Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

**3.** *See supra,* Note 1.

**4.** 301(d), addressing the procedure for service of process in LMRA § 301 actions, does not provide an alternative source of personal jurisdiction over the parties in this action. Courts have held that § 301(d) does not provide for nationwide service of process. *Baldwin v. Poughkeepsie Newspapers, Inc.,* 410 F.Supp. 648, 649 (S.D.N.Y. 1976); *United Elec. Workers v. 163 Pleasant Street,* 960 F.2d 1080, 1086 nt. 5 (1st Cir.1992) ("The LMRA ... makes no provision for either nationwide or worldwide service"); *Central Operating Co. v. Util. Workers of Am.,* 491 F.2d 245, 249–50 (4th Cir.1974) ("[W]e see no compelling reason to interpret 185(d) to authorize nationwide service of process....").

close question[5], as does whether the Pension Trust and the DGA-appointed Trustees can be served properly by service upon the DGA.[6] LMRA § 301(c).

*Application of 28 U.S.C. 1404(a) to this action*

■ Before resolving the foregoing issues, however, we must first analyze defendants' motion to transfer under 28 U.S.C. 1404(a). The overwhelming weight of authority persuades us that, even if this District represents an available forum for this action, we retain discretion under 1404(a) to transfer this action to another appropriate forum.[7]

Section 1404(a) provides that:

[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a).

■ As a threshold matter, this Court must determine whether the proposed transferee jurisdiction is a proper forum for resolution of this dispute. We so find because plaintiffs could have brought this action in California in the first instance. *See Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F.Supp. 858, 868 (S.D.N.Y.1991); 28 U.S.C. § 1391(a), (c). The action involves a claim under the LMRA. Venue lies in any federal district court which has jurisdiction over the parties. LMRA § 301(a), (c). The Central District of California exercises personal jurisdiction over all of the parties: (1) the DGA's principal office is in Los Angeles, California; (2) the Pension Trust maintains its only office in the Central District of California; (3) the

---

5. Courts have held that analysis under section 301(c) and minimum contacts analysis are virtually identical. *Reed v. Int'l Union of United Auto., Aerospace Agric. Implement Workers of Am.*, 945 F.2d 198, 201 nt. 3 (7th Cir.1991) ("[T]he requirements under both section 301(c) and the due process "minimum contacts" standard have been held to be so similar that analysis under either would yield the same result"); *Local 670 v. Int'l Union, United Rubber, Cork, Linoleum, and Plastic Workers of Am.*, 822 F.2d 613, 620–21 (6th Cir.1987) ("[T]he analysis required under either section 301(c) or the traditional rule of 'minimum contacts' is so similar as to render this issue a distinction without a difference").

6. Decisions addressing the relationship between international and local unions for purposes of service and jurisdiction provide some guidance in making such a determination. *See e.g., Morgan Drive Away v. Int'l Teamsters Union*, 268 F.2d 871 (7th Cir.1959) (Whether service upon a local union is proper service upon the international union depends on the "actual relationship" between the two entities. *Id.* at 874) ("[w]here ... local labor organizations, affiliated with an international parent union, are autonomous associations, service of process upon [the local] ... is not service [upon the international] ..." *Id.* at 877). To determine the relationship between the local and the international, courts have examined the constitution and by-laws of the unions, concluding that where the local and the international have separate constitutions, they constitute separate entities. *Ibrandtsen Co. v. Nat'l Marine Eng'rs' Beneficial Ass'n*, 9 F.R.D. 541 (S.D.N.Y.1949) ("where the constitution of the national union indicates a distinction between the national and a local ... the national and local are autonomous entities, and, therefore, service of process on the one is not valid service on the other" *Id* at 543); *Boss v. Int'l*

*Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers*, 567 F.Supp. 845, 846 nt. 1 (N.D.N.Y.1983); *See also Shimman v. Frank*, 625 F.2d 80, 97 (6th Cir.1980); *Barefoot v. Int'l Bhd. of Teamsters*, 424 F.2d 1001 (10th Cir.1970), cert. denied, 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed.2d 257 (1970).

Under this analysis, service upon the DGA in New York does not constitute service upon the Pension Trust. The Pension Trust is an entity with its own constitution and, though governed in part by the DGA through its appointed Trustees, is also governed by a group of Producers. Thus, for purposes of service, the Pension Trust represents an entity distinct from the DGA.

With respect to the Trustees, insofar as they are sued in their capacity as Pension Trust Trustees, the same reasoning arguably applies. The Trustees, however, function as officers of the DGA, and issues exist as to whether they act independently or simply as agents of the DGA. The greater their independence, of course, the more likely they should be regarded as separate from the DGA for purposes of service.

We note that plaintiffs seemingly acknowledge the marginality of their position with respect to the Pension Trust and the Trustees by offering to sever the Pension Trust and the Trustees from the action.

7. Accordingly, we reject plaintiffs' contention that 28 U.S.C. § 1404(a) does not apply to LMRA § 301 actions. *See Mobile Video Services, Ltd. v. Nat'l Ass'n of Broadcast Employees and Technicians, AFL–CIO*, 574 F.Supp. 668, 669–70 (S.D.N.Y.1983); *Berrigan v. Greyhound Lines, Inc.*, 560 F.Supp. 165, 168 (D.Mass.1982); *Amalgamated Clothing and Textile Workers Union, AFL–CIO, CLC v. Fed'n of Union Representatives*, 664 F.Supp. 995, 996 (S.D.W.V.1987).

Trustees conduct their activities relating to the Plan in the Central District of California. *See* Gumpel Affidavit at 8; Rowlett Affidavit at 4. Accordingly, the Central District of California provides a proper forum in this action for venue and jurisdictional purposes.

■ In determining whether a case should be transferred under § 1404(a), the Court considers the following factors:

(1) the place where the operative facts occurred; (2) the convenience to parties; (3) the convenience of witnesses; (4) the relative ease of access to sources of proof; (5) the availability of process to compel attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) the forum's familiarity with the governing law; and (8) trial efficiency and the interest of justice. *Viacom Int'l*, 774 F.Supp. at 867–868 (citations omitted).

Balancing these factors is left to the sound discretion of the District Court. *Milgrim Thomajan & Lee P.C. v. Nycal Corp.*, 775 F.Supp. 117, 122 (S.D.N.Y.1991) (citations omitted). The moving party must, also, make a clear showing to justify the change of venue. *Id.* (citations omitted).

"The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses." *Viacom Int'l*, 774 F.Supp. at 868 (citations omitted). "Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district." *Id.; see also Arrow Electronics, Inc. v. Ducommun Inc.*, 724 F.Supp. 264, 266 (S.D.N.Y.1989) ("[i]n most cases, the convenience of the party and non-party witnesses is the most important factor in the decision whether to grant a motion to transfer") (citations omitted).

Transfer is appropriate here. First, the events at issue took place in California. The DGA and the Producers' union conduct their negotiations in Los Angeles, and that is where they negotiated the Plan. *See* Gumpel Affidavit at 7. The Plan is administered by a Board of Trustees which conducts quarterly meetings in Los Angeles. *See* Rowlett Affidavit at 4. All voting and decisions as to the Plan take place in Los Angeles, as did the meetings at which the Board of Trustees voted to make changes to the Plan. *See* Rowlett Affidavit at 4.

Second, many of the relevant witnesses are in California and, thus, remain beyond the subpoena power of this Court. *See* Fed. R.Civ.P. 45. These witnesses, however, fall within the scope of the subpoena power of the Central District of California. "The availability of process to compel the testimony of important witnesses is an important consideration in transfer motions." *Arrow Electronics*, 724 F.Supp. at 265. Every Trustee who participated in the changes to the Plan, with the exception of one, reside in California and conduct Plan business in California. *See* Rowlett Affidavit at 4, 6; Trustees' Affidavits. The Plan Administrator resides in California and works at the Plan's principal office in Los Angeles. *See* Rowlett Affidavit at 1–2, 4. The Martin Segal Company, an actuarial consulting firm, retained by the Plan to gather information and prepare analysis regarding revision of the Plan, is located in both New York and California. *See* Bates Affidavit at 2. However, all four employees of Segal who advised the Plan regarding revision live and work in California. *See* Bates Affidavit at 5.

While § 1404(a) accords some weight to plaintiffs' choice of forum, here plaintiffs' choice of forum bears "little material connection" to the Southern District of New York. *St. Regis Mohawk Tribe v. State of New York*, 774 F.Supp. 185, 189 (S.D.N.Y.1991); *see also Arrow Electronics*, 724 F.Supp. at 265 (where the facts of the action bear little connection to the chosen forum, "plaintiff's choice is given reduced significance") (citations omitted). More precisely, plaintiffs allege, only, that certain omissions in New York connect this action to this District. They claim that the DGA failed to consult the DGA membership in New York regarding proposed Plan changes; that the DGA did not submit the proposed changes to a membership vote in New York; and that the DGA did not investigate grievances regarding the Plan in New York. Regarding the alleged failure to submit the proposed changes to a membership vote in New York and to investigate grievances in New York, such omissions

do not constitute specific connections to New York. If the DGA was, indeed, required to conduct a membership vote or to respond to grievances, which we do not here find, this omission occurred wherever DGA members reside and work. The record before the Court clearly establishes that the majority of DGA members reside in California. *See* Gervis Affidavit at 3. While plaintiffs counter that most DGA members aggrieved by the Plan changes reside in New York, the only proof plaintiffs offer of this assertion is that more members attended the special meeting in New York to discuss Plan changes than elsewhere.[8] *See* Plaintiffs' Memorandum of Law, p. 11; Bordiga Affidavit at 8. The Court finds that this proof is not compelling.

With respect to the alleged failure to consult the DGA membership regarding the changes to the Plan, plaintiffs acknowledge that the DGA held a special meeting in New York so that members could discuss Plan changes, and plaintiffs argue, in fact, that this meeting further connects this action to the Southern District of New York.[9] *See* Plaintiffs' Memorandum of Law at p. 11; Bordiga Affidavit at 8. In fact, only this special meeting and a DGA Board meeting, at which the proposed Plan changes were revealed, occurred in this District. These two meetings comprise a small portion of the events central to this action. The center of gravity of this action clearly lies in the Central District of California, and this Court, accordingly, places diminished weight on plaintiffs' choice of forum.

Finally, plaintiffs argue that a transfer of this action would unduly burden them because 1) plaintiffs' attorneys reside and work in New York; 2) plaintiffs are constrained economically; and 3) the "lead" plaintiffs live and work in New York. This Court finds the foregoing arguments unpersuasive. First, this Court accords little weight to the convenience of plaintiffs' attorneys. *Kolko v. Holiday Inns*, 672 F.Supp. 713, 715 (S.D.N.Y.) ("The convenience of plaintiff's attorney, without more, is not decisive in determining whether to grant or deny a transfer"). Further, no proof exists to support plaintiffs' contention that they are not able to obtain adequate counsel in California. Second, the economic situation of the parties does not weigh heavily on this Court's decision. *Kolko*, 672 F.Supp. at 716 ("The relative economic ability of the parties to proceed with a case has rarely been a dispositive reason to grant or deny a venue change"). Third, this Court finds unconvincing plaintiffs' assertion that no DGA member in California would arise to lead this action, if transferred. In fact, a majority of potential class members reside in California and six of the named plaintiffs reside and work in California. *See* Gervis Affidavit at 3; Complaint at 11, 12–13, 16, 18.

*CONCLUSION*

For the reasons set forth above and in the interests of justice, defendants' motion to transfer this action to the Central District of California is granted.

SO ORDERED.

---

**8.** The DGA held special meetings to discuss Plan changes in Chicago, Los Angeles, Miami, New York, Orlando, San Francisco, and Washington D.C.

**9.** We observe that plaintiffs themselves implicitly diminish the significance of this special meeting by arguing that, despite the special meeting, the DGA failed to adequately consult the DGA membership regarding proposed Plan changes.