Frank A. Gulotta, J.
In this action, based upon a written contract, plaintiff sues to recover damages for a breach thereof. Defendant has counterclaimed alleging the breach to have been on the plaintiff’s part.
Plaintiff, contemplating the construction of. some 250 houses in Islip, New York, on July 12, 1955 entered into a written agreement with defendant whereby the latter agreed to furnish labor, material and equipment for clearing, grading, excavation and concrete work, and, in addition thereto, to supply fill. Defendant entered upon its work and was paid the sum of $8,250 in periodic payments, until November, 1955, when a dispute arose as to the scale of payments to be used for transporting fill. From the standpoint of clarity, the contract leaves something to be desired with relation thereto. A plausible argument can be made that the terms used fixed the rate of compensation at $5.50 per 10-vard water level truck load and nothing more. The contract does not say that fill had to be carted in loads of that size and no other. Defendant contends that since each of his trucks delivered 13 yards per load, and that since delivery tickets were initialed at the time of delivery by an employee of plaintiff, it was entitled to recover $7.15 per 13-yard truck load. The instrument was drawn by the plaintiff, and under the oft-enunciated principle that ambiguities in contracts will be resolved against the drawer of the document (Gillett v. Bank of America, 160 N. Y. 549), the court will construe the clause to be one which fixes the rate of compensation rather than the size of each load.
However, the question of who was right in this dispute is not determinative of the issues in this case because the matter was left open for further discussion after the parties failed to agree on it at a meeting held November 29, 1955 and that did not become the reason for terminating the contract at the instance of either party. From that date until February 9, 1956, when plaintiff finally sent defendant a notice terminating its contract, plaintiff’s representatives made innumerable attempts to contact Mr. Raymond, president of defendant corporation, at his office, at his home and at other jobs at all hours of the day and night, to no avail. During that period plaintiff had entered into contracts with some 30 individuals for the construction and delivery of homes. On two occasions, on December 6, 1955 and again on January 5, 1956, when plaintiff did meet up with Mr. Raymond, he was given $1,000. On each occasion, he promised to start the next day. The $1,000 check which he received on January 5 he said would be used for the purchase of a carload of cement to permit him to start work *873 the following day. However, he never appeared on that day or on any other day thereafter.
At the trial he blandly maintained that he had properly used the check because he did purchase cement with it, although he used the cement on another job.
So it is clear that the defendant’s excuses for not continuing with its work are afterthoughts, dredged up after the event to justify its failure to perform.
While there may have been some delay on the plaintiff’s part in procuring building permits, in having grade stakes set out, etc., this was all water over the dam when defendant took the last $2,000 in payments and agreed to proceed with the work forthwith.
Since this was an entire contract so far as the clearing, grading and cement work is concerned, my conclusion that defendant’s breach of the contract justified plaintiff in terminating it and in hiring other contractors to complete its work, makes it unnecessary to determine the reasonable value of the work completed by the defendant. There can be no partial recovery by a breaching contractor for the reasonable value of his work unless it amounts to substantial performance of the entire contract. (Steel Stor. & Elevator Constr. Co. v. Stock, 225 N. Y. 173.)
The defendant’s careless, slovenly way of conducting business or more accurately speaking “ not conducting it ” made it virtually impossible to continue the operation while dependent upon it.
The plaintiff proved by precise, accurate and believable evidence that it spent $210,682 to complete this job from the point where defendant abandoned it. The contract price comes to $179,270 computed at $910 per house for 197 houses, thus leaving a deficit of $31,412.
A reasonable attorney’s fee for removing the lien wrongfully filed by defendant is determined to be $150. 0
The agreement for delivery of fill must be considered sever-able from the rest of the contract, since performance was made optional with the defendant.
There are delivery slips for 1,764 loads of 13 yards each, of which I find 122 to be duplicates. I place little weight on the fact that many tickets bear the same printed number, where the tickets themselves were not otherwise exact duplicates of the written portion. Using printed duplicates for originals is what one would expect of this defendant. Computing the price of these deliveries at 55 cents per yard or $7.15 per 13-yard load, gives us a figure of $11,740.30 which, after deducting $10,250 *874 paid by plaintiff, results in a credit balance of $1,490.30 in favor of defendant.
Crediting this against the $31,562 due plaintiff on the main . contract, leaves a final balance of $30,071.70.
Judgment is therefore granted in favor of the plaintiff and against the defendant in the amount of $30,071.70, with interest and costs and the counterclaim is dismissed on the merits.
This decision contains the findings of the court in accordance with section 440 of the Civil Practice Act. Settle judgment on notice.