567 F.Supp. 845 (1983)
Willard BOSS and Robert Rawlins on behalf of themselves and as representatives of the class herein defined, Plaintiffs,
v.
INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIPBUILDERS, BLACKSMITHS, FORGERS AND HELPERS, Defendant.
No. 82-CV-352.
United States District Court, N.D. New York.
June 15, 1983.
*846 McGinn & Brown, P.C., Albany, N.Y., for plaintiffs; Arthur F. McGinn, Albany, N.Y., of counsel.
Blake & Uhlig, P.A., Kansas City, Kan., Pozefsky, Pozefsky & Bramley, Albany, N.Y., for defendant; Joseph W. Moreland, Kansas City, Kan., Bruce C. Bramley, Albany, N.Y., of counsel.

MEMORANDUM-DECISION and ORDER
MINER, District Judge.

I
In this class action, plaintiffs allege that the International Brotherhood of Boiler-makers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers (hereinafter "International") breached both its duty of fair representation and certain collective bargaining agreements. These claims arise under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, and jurisdiction is predicated upon 28 U.S.C. § 1337. Before this Court are defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56(b) and plaintiffs' motion for class certification pursuant to Fed.R.Civ.P. 23.

II
The facts here are simple and straightforward. The named plaintiffs are residents of New York who claim to be qualified for referral as construction "boilermakers" under the terms of applicable labor agreements and who allege that they were denied employment for reasons which are "irrelevant, invidious or unfair to, or in derogation of, the employment status of such plaintiffs." (Complaint, ¶ 29). Although no specific allegation of involvement by the International is made, plaintiffs maintain that defendant International stands "throughout the United States ... [as the] ... exclusive representative of employees for the purposes of collective bargaining ..." and, therefore, all "subordinate subdivisions serve as defendant's agents in administering the exclusive referral procedures contained in the labor contracts...." (Complaint, ¶¶ 5, 11). Accordingly, through affiliated local unions, acting as "agents," the International is perceived to have breached both the collective bargaining agreements and the federally imposed duty of fair representation in the "administration of exclusive referral procedures." (Complaint, ¶ 15). As a result, plaintiffs allege that they "have [along with other unnamed persons throughout the country] been denied employment under such contracts. ..." (Complaint, ¶ 26).

III
Section 301(b) and (e) of the National Labor Relations Act, 29 U.S.C. § 185(b) and (e), provide in part as follows:
(b) Any labor organization which represents employees in an industry affecting commerce ... shall be bound by the acts of its agents ....
* * * * * *
(e) For the purposes of this section, in determining whether any person is acting as an "agent" of another person so as to make such other person responsible for his acts, the question of whether the specific *847 acts performed were actually authorized or subsequently ratified shall not be controlling.
The issue here is whether the local union is an agent of the International so that the International may be held vicariously liable for the improper acts alleged.
A considerable body of federal case law applying agency[1] principles to labor relations reflects the importance of "control" by establishing the rule that a local union is not an agent of the International if that local is "autonomous and independent." See, e.g., Shimman v. Frank, 625 F.2d 80, 97 (6th Cir.1980); Barefoot v. International Brotherhood of Teamsters, 424 F.2d 1001 (10th Cir.1970), cert. denied, 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed.2d 257 (1971); Baldwin v. Poughkeepsie Newspapers, Inc., 410 F.Supp. 648 (S.D.N.Y.1976). In order to determine the local's autonomy, courts have looked at the constitution and the by-laws of the union. Shimman v. Frank, supra; Barefoot v. International Brotherhood of Teamsters, supra.
However, neither complete separation nor total lack of control by the International is required to determine that a local is autonomous. Indeed, a local union may remain autonomous and independent notwithstanding the fact that the International retains a degree of supervisory authority. Baldwin v. Poughkeepsie Newspapers, Inc., supra. See Morgan Drive Away, Inc. v. Teamsters Union, 166 F.Supp. 885 (S.D.Ind. 1958), aff'd, 268 F.2d 871 (7th Cir.1958), cert. denied, 361 U.S. 869, 80 S.Ct. 199, 4 L.Ed.2d 152 (1959) (where the Seventh Circuit held that, even though the int'l constitution placed complete executive, legislative and judicial control in the int'l, as well as plenary power to suspend the local and seize its property, approve strikes, suspend and remove officers and levy assessments, the local would be considered autonomous for purposes of attributing vicarious liability to the int'l if the local retained some power); see also Axel Newman Co. v. Sheet Metal Workers, 37 LRRM 2038 (D.Minn.1955).
This judicial gloss on labor agency under section 301 was refined by the Supreme Court in Carbon Fuel Co. v. United Mine Workers, 444 U.S. 212, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979). There, the Court addressed "the ... issue of whether an international or district union may be held legally responsible for locals' unilateral actions which are concededly in violation of the locals' responsibilities under the contract." 444 U.S. at 216 n. 5, 100 S.Ct. at 413 n. 5. The collective bargaining agreements contained a clear-cut no-strike obligation and a mandatory grievance and arbitration procedure for resolution of all disputes. Nevertheless, three of the local unions covered by the agreements engaged in 48 wildcat strikes from 1969 to 1973. Both the local unions and the signatory union were sued for breach of contract and damages.
The Court refused to hold the International liable for the wildcat strikes by the locals, even though the International was the sole signatory of the collective bargaining agreements. Heeding the advice of Chief Justice Taft in Coronado Coal Co. v. Mine Workers, 268 U.S. 295, 304, 45 S.Ct. 551, 554, 69 L.Ed. 963 (1925), that to find the union liable "it must be clearly shown *848 ... that what was done was done by their agents in accordance with their fundamental agreement of association," the Supreme Court held:
"There was no evidence presented in the district court that either the District or International Union instigated, supported, ratified, or encouraged any of the work stoppages ...." [citation omitted] Under ... the UMWA constitution, the local unions lacked authority to strike without authorization from UMWA. [citation omitted] Moreover, UMWA had repeatedly expressed its opposition to wildcat strikes. Petitioner thus failed to prove agency as required by §§ 301(b) and (e), and we therefore agree with the Court of Appeals that "under these circumstances it was error for the [District Court] to deny the motions of these defendants for directed verdicts." [citation omitted]
Carbon Fuel Co. v. United Mine Workers, supra, 444 U.S. at 218, 100 S.Ct. at 414.
Thus, to hold an International vicariously liable for the acts of the locals as agents, it must either be shown that the International "instigated, supported, ratified or encouraged" such acts, or that the locals acted pursuant to "their fundamental agreement of association."[2]See Mauget v. Kaiser Engineering, Inc., 105 LRRM 3374 (S.D.Ohio 1980). Here, plaintiffs have failed to provide evidentiary support for either prong of the labor agency test.
Article VII of section 1(a) of the International Constitution provides in part:
the subordinate bodies [i.e. locals] of the Brotherhood shall have autonomy in the conduct of their affairs, including organizing activities and the negotiation and administration of collective bargaining agreements where not done by the International Brotherhood itself or where the International Brotherhood is not a party to said collective bargaining agreement and engaging in economic activity to that end; and provided, further, that the International Brotherhood shall not be responsible for any actions, activities or omissions of any of its subordinate bodies or their representatives unless the same were authorized or directed by the International Brotherhood. (emphasis added).
Pursuant to the above, plaintiffs argue that local autonomy does not exist, since the International was the sole signatory to the collective bargaining agreement. Plaintiffs miss the point.
Although the International was the sole signatory to the Northeastern States Articles of Agreement (the instant collective bargaining agreement), the local unions here still retain plenary control over collective bargaining, including "dispatching of job referral applicants," International Constitution, article XXIV, section 10,[3] and administration of the collective bargaining agreement, Northeastern States Articles of Agreement, articles 5.3, 9, 11 and 26. There is absolutely no indication in the International Constitution, collective bargaining agreement or any of the proffered by-laws that the International was responsible for any of the complained of acts. Moreover, there is not a scintilla of evidence in the record that the International ratified or approved these acts.[4] To hold, then, that the International is liable here for the impermissible acts of a local simply because the International was the sole signatory to the *849 collective bargaining agreement would be contrary to the holding of Carbon Fuel.

IV
Accordingly, defendant's motion for summary judgment is granted in its entirety, and plaintiffs' motion for class certification is denied.
It is so Ordered.
NOTES
[1] Agency is, of course, a contractual, consensual relationship where one agrees to act on behalf of another. The Restatement 2d of the Law of Agency defines the relationship as follows:

The fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.
Restatement of the Law of Agency 2d, subsec. 1(1) (1958). The elements of common law agency are thus: (1) consent; (2) fiduciary duty; (3) absence of gain or risk to the agent; and (4) control by the principal. H.G. Reuschlein and W.A. Gregory, Agency and Partnership 11 (1979). The element most essential to the demonstration of any agency relationship is that of "control." Id. It is important to note that common law doctrines of agency have been incorporated into the corpus of federal labor law. See United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).
[2] That is, the locals did not retain the requisite degree of autonomy.
[3] Four local unions are parties to the Northeastern Agreement: Oswego, Albany, Hartford and Boston. Business Managers of each local vote to accept, or reject, employer proposals.
[4] Indeed, the Joint Referral Rules Committee, which promulgates rules and regulations for operating hiring halls, expressly prohibits discriminatory treatment in the referral process. (Plaintiffs' motion for class certification, Ex. VIII). It is clear, taking plaintiffs' allegations as true, that the locals complained of did not act in accordance with any "fundamental agreement of association." Coronado Coal Co. v. Mine Workers, supra.