In re ROBERT LANDAU ASSOCIATES, INC., Robert Landau International Ltd., Professional Sports Licensing, Inc., RLA Conventions & Events, Inc., Debtors.

RLA CONVENTIONS & EVENTS, INC., Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant and Plaintiff on Interpleader Counterclaim,

v.

RLA CONVENTIONS & EVENTS, INC., Tom Pearce Productions, Sunny Maintenance Co., Canvas Specialty, Gourmet Faire, Trade Suppliers, Walter Justin Connolly, Adrienne Cordova, Bruce E. Cowley, Sandrak Edgerton, Javier Grajeda, Diana Griego, Robert Knise, Clorinda Montoya, Manual Montoya, Jr., Robert O'Neil, Nancy Polonitza, Annette Roget Paul Roman, Gerald Roth, Jane M. Schreifels, Sharon Trocki, Donald G. Welch, Diane Woodward, "John Doe," being all other parties whose exact identities are unknown, individually and as representatives of a class of subcontractors of RLA pursuant to the agreement with IBM, Defendants on Interpleader Counterclaim

Bankruptcy Nos. 84 B 11275 to 84 B 11278 (TBB).

Adv. No. 84–6182A.

United States Bankruptcy Court, S.D. New York.

Jan. 13, 1986.

Moses & Singer, David Picker, New York City, for Trustee.

Murphy, Ellis & Gartlan by Robert Baumol, Dermot Doyle, Hackensack, N.J., for Canvas Specialty.

Burns, Kennedy, Schilling & O'Shea by Edmund J. Burns, New York City, for IBM.

## OPINION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

TINA L. BROZMAN, Bankruptcy Judge.

Prior to its bankruptcy, RLA Conventions & Events, Inc. ("C & E") entered into an agreement ("Agreement") with International Business Machines Corporation ("IBM") obligating C & E to provide to IBM catering and other services for IBM's hospitality center at the 1984 Summer Olympics. To fulfill its contractual obligations, C & E hired various third party vendors who, because of the intervening bankruptcy, were never paid for the goods or services which they provided. It is a dispute with one such vendor, Canvas Specialty Corporation ("Canvas"), respecting the nature of the relationship between C & E and IBM which is the subject of the pending motion for summary judgment before this court.

On September 14, 1984, C & E and three related entities filed petitions for relief under chapter 11 of the Bankruptcy Code (the "Code"). On February 1, 1985, all four cases were converted to liquidations under chapter 7 of the Code. Albert Togut, Esq. was appointed as trustee of the estates. During the debtor-in-possession period, C & E commenced an adversary proceeding against IBM in this court seeking to recover in excess of $75,000 which C & E alleged was due to it under the terms of its contract with IBM. Because many of the third party vendors pursued or threatened to pursue IBM, rather than C & E, for payment, IBM interpleaded them. C & E cross-claimed for a declaration that the third party vendors, as a group, were not entitled to any payment from IBM. The only remaining unresolved third party claim is that of Canvas, who seeks $7,858.50 of the interpleader fund. C & E

maintains that the claim against IBM is property of C & E's estate, of which estate Canvas is merely an unsecured creditor.

Under the terms of the Agreement between IBM and C & E, C & E was to act as an "independent contractor" assuming full responsibility over, among other things, the "payment of salary" to personnel supplied who would be deemed "employees of [C & E] and [would] not for any purpose be deemed employees of IBM." *See* Agreement at ¶ IV. C & E was to maintain general and liability insurance and to have "an appropriate agreement with each of its employees or others whose services it may require sufficient to enable it to comply with all terms of this agreement." Agreement at ¶¶ VI and IX. Notwithstanding that independent contractor label utilized by IBM and C & E, Canvas asserts that the relationship between IBM and C & E, as evidenced by their actual dealings, was instead an agency relationship so that Canvas is entitled to payment directly from IBM, as disclosed principal. The evidence proffered by Canvas reveals in part that an IBM representative was present at the hospitality center and sometimes made requests for materials directly to Canvas. The evidence also suggests that IBM was involved in the planning process for the hospitality center.

These facts and others proffered by Canvas were offered through the deposition of Peter Steffenson, the Party Coordinator for the rental division of Canvas. The Trustee objects to the admission of this deposition because he asserts that he did not receive notice and was therefore not present to cross-examine and object. Further, he argues that the deposition is otherwise inadmissible as it contains leading questions. It appears that Canvas properly gave notice of the deposition, which was originally scheduled for January 9, 1985, to the attorneys for the then debtor-in-possession.[1] The deposition was ultimately taken

on February 12, 1985, eight days after entry of the order converting the cases to chapter 7 and seven days after appointment of a trustee. Counsel for the Trustee asserts that he did not receive notice of the deposition either directly from Canvas or indirectly through the files received from the debtor's counsel. *See* Reply Affidavit of David Picker at ¶ 3. However, the Trustee has made no showing to the court that Canvas was aware on February 12, 1985 that the case had been converted and a trustee appointed.[2]

Pursuant to Fed.R.Civ.Pro. 12(b)(6) and 56 and Fed.R.Bankr.Pro. 7012(b) and 7056, C & E seeks to dismiss Canvas' claim to the interpleader funds. The parties having submitted affidavits and other evidence outside the pleadings, the rule 12(b) motion to dismiss will accordingly be treated as one for summary judgment. For the reasons which follow, such judgment is denied.

## DISCUSSION

The function of summary judgment is not to resolve disputed facts but to determine whether there are genuine issues of material fact to be tried. In the absence of such issues, the court may grant summary judgment to the moving party if he is entitled to it as a matter of law. Fed.R.Civ.Pro. 56(c); *Nahtel Corporation v. West Virginia Pulp & Paper Co.*, 141 F.2d 1, 2 (2d Cir.1944); *See Chappell & Co. v. Frankel*, 367 F.2d 197, 204 (2d Cir.1966) (en banc). The moving party bears the burden of demonstrating the absence of genuine issues of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Teitelbaum v. Equitable Handbag Co. (In re Outlet Department Stores)*, 49 Bankr. 536 (Bankr.S. D.N.Y.1985). As a predicate to determining whether there exist genuine issues of material fact, we must first determine whether the Steffenson deposition is admissible.

---

**1.** The notice of deposition is contained in the court's file on this adversary proceeding.

**2.** The docket sheet reflects that creditors were not mailed notices of conversion until June 5,

1985, some four months subsequent to the event. It does not appear that the Trustee ever formally substituted himself for the plaintiff, either.

### 1. *Admissibility of Deposition*

Subdivisions (c) and (e) of Fed.R.Civ.Pro. 56 expressly contemplate the use of depositions both in support of and in opposition to motions for summary judgment. But Rule 56 cannot be read in a vacuum; it must be analyzed in light of Rule 32(a)[3], which governs the use of depositions in motion and trial practice. The latter permits a deposition to be used in support of a motion if there has been proper notice of the deposition, it is otherwise admissible under the rules of evidence (applied as though the witness were then present and testifying) and one of a variety of other enumerated factors is present.

■ Although here, the deposition is embraced by at least one of the enumerated categories, Rule 32(a)(3)(B), since the witness is located in California, more than 100 miles from this court, the Trustee claims to have been deprived of notice of the deposition. Because of the unfortunate circumstances that the deposition was taken without the knowledge of the Trustee only a week after his appointment and at a time when the debtor's counsel, who had had notice of the deposition, was no longer empowered to represent the interests of the estate, the estate went unrepresented and Steffenson was not cross-examined. Under such circumstances, Rule 32(a) bars receipt of the deposition *qua* deposition. But a developing body of case law, to which this court subscribes, allows the use of depositions as affidavit in motion practice.

One treatise has commented:

> [D]epositions can be used more freely on motions than the rule [32(a)] would seem to indicate. A deposition is at least as good as an affidavit and should be useable whenever an affidavit would be permissible, even though the conditions of the rule on use of a deposition at trial are not satisfied.

Wright & Miller, *Federal Practice and Procedure* § 2142 at 452 (1970). A number of federal courts have followed this lead. In *Hoover v. Switlik Parachute Company,* 663 F.2d 964, 966–67 (9th Cir.1981), the Ninth Circuit Court of Appeals considered as affidavits in support of a motion for summary judgment various depositions notwithstanding that the party against whom they were to be used had been joined after the depositions were taken. Noting that the depositions were not usable as such, the circuit court upheld their admission as affidavits because they were made on personal knowledge and set forth admissible facts and because "we find nothing which requires that term [affidavit] to be construed within the limitation of Rule 32(a)." *Id.* at 966. Other decisions are in accord. *See, e.g., In re Melton,* 39 Bankr. 762 (Bankr.N.D.Ga.1984) (considering a deposition as an affidavit on a motion for summary judgment where the deposition was not in compliance with rule 32(a) because notice was not accorded party against whom it was being used); *Tormo v. Yormack,* 398 F.Supp. 1159, 1168 (D.N.J. 1975) (court considered deposition testimony which, although not in compliance with rule 32(a), was "at least as good as affidavits"); *United States v. Fox,* 211 F.Supp. 25 (E.D.La.1962), *aff'd* 334 F.2d 449 (5th Cir.1964) (holding admissible depositions for preliminary injunction motion because depositions were taken under oath and were "at least as good as affidavits.")

Here, the deposition is based on the personal knowledge of Peter Steffenson, was taken under oath and was signed by him.[4] Accordingly, we will admit the deposition as an affidavit in opposition to Trustee's motion for summary judgment. Having reached that determination, we need not deal with the Trustee's objection to leading questions because the deposition testimony could have been embodied in an affidavit.[5]

---

**3.** Federal Rule of Bankruptcy Procedure 7032 makes the rule applicable in adversary proceedings.

**4.** *Cf. Blum v. Campbell,* 355 F.Supp. 1220 (D.Md. 1972) where neither the deponent nor the nota-

ry public who administered the oath executed the deposition.

**5.** We recognize that even under the relaxed standard for the use of depositions on motions, the testimony must still be admissible evidence.

## 2. *Genuine Issue of Material Fact*

Canvas' evidence is offered in support of its claim that the relationship between IBM and C & E was one of principal and agent. That agency argument is critical because, if Canvas is correct, C & E's interest in the disputed funds would not comprise property of the estate and C & E would therefore have no claim of entitlement to the funds. *See* 4 Collier, *Bankruptcy* § 541.08[2] (15th ed. 1985); *see also Purcell v. STN Enterprises, Inc. (In re STN Enterprises, Inc.)* 47 Bankr. 315 (Bankr.D.Vt.1985) and cases cited therein. As an independent contractor, however, C & E may rightfully claim the funds, relegating Canvas to the status of a general unsecured creditor. *See generally Columbia Broadcasting System, Inc. v. Stokely Van-Camp, Inc.*, 522 F.2d 369, 377 (2d Cir.1975).

■ Although the Agreement designates C & E as an "independent contractor," the inquiry does not end there, for this court may look beyond that contract to ferret out the true relationship of the parties. *See, e.g., Anchor Savings Bank v. Zenith Mortgage Co.*, 634 F.2d 704, 706 n. 2 (2d Cir.1980). As this Circuit has recognized, the terms "agent" and "independent contractor" are distinct only colloquially; the usual "agent" is generally an independent contractor (as distinguished from a "servant") as well. *Columbia Broadcasting System*, 522 F.2d at 375, n. 14. The concept of agency necessarily addresses issues of control[6] and apparent or implied authority which are rarely susceptible to summary judgment. *See American Broadcasting Companies, Inc. v. Climate Control Corporation*, 524 F.Supp. 1014, 1017 (N.D.Ill.1981). Specifically, the Second Circuit Court of Appeals has held that in determining whether an independent contractor is an agent with authority to bind the principal, the court must look to the

> accompanying circumstances, including the situation of the parties, their relations to one another, and the business in which they are engaged; the general usages of the business in question and the purported principal's business methods; the nature of the subject matters and the circumstances under which the business is done.

*Columbia Broadcasting System*, 552 F.2d 3 at 375–76; *see also In re Dean Burdick Associates, Inc.*, 19 Bankr. 813, 815 (Bankr. S.D.N.Y.1982).

■ Certain testimony elicited from Steffenson supports Canvas' contention that IBM was the principal and C & E, the agent. Steffenson testified, for example, that "[t]he planning stages [of the hospitality center] were headed by IBM VIP's" (Tr. at 8); that Canvas accepted orders for additional goods from both IBM and C & E (Tr. at 11); that C & E first communicated with Canvas to arrange a meeting with IBM personnel on the convention site (Tr. at 12); that IBM, rather than C & E, requested from Canvas the items to be used at the hospitality center (Tr. at 12); and that IBM

---

For example, the testimony itself may not be based on hearsay. Such is not the case here. The Trustee's leading question objection speaks to the form rather than to the substance of the deposition. Since it is the substance of the deposition which is being admitted as though it were an affidavit, the form is of little moment. In any event, this court is satisfied that even omitting that testimony which comprised responses to leading questions, the remaining testimony creates a material factual issue.

**6.** The elements of common law agency are (1) consent; (2) fiduciary duty; (3) absence of gain or risk to the agent; and (4) control by the principal. *Boss v. International Brotherhood of Boilermakers*, 567 F.Supp. 845, 847 n. 1 (N.D. N.Y.) *aff'd* 742 F.2d 1446 (2d Cir.1983) citing

H.G. Renschlein and W.A. Gregory, *Agency and Partnership* 11 (1979). The element most essential to the demonstration of any agency relationship is that of "control." *Id.; see Mazart v. State*, 109 Misc.2d 1092, 1099, 441 N.Y.S.2d 600, 604–05.(Ct.Cl.1981) [ ("it is characteristic of the relationship of principal and agent that the principal has a right to control the conduct of the agent with respect to matters entrusted to him. While this control need not apply to every detail of an agent's conduct and can be found where there is merely a right held by the principal to make management and policy decisions affecting the agent, there can be no agency relationship where the alleged principal has no right of control over the alleged agent.") (citations omitted) ]

had had on location at the site one person who, together with a C & E representative, had the final word as to what was to be ordered from Canvas (Tr. at 13). The Agreement between IBM and C & E confirms the testimony to some extent. At paragraph 2 it provides that if additional requests for goods or services are made by either IBM or C & E that would increase the cost estimate for the job, they must be approved in writing by the IBM Olympics Program Manager or his representative before the fact. The foregoing is sufficient to raise material issues of fact as to who controlled the planning for the hospitality center and as to who directed Canvas. Accordingly, summary judgment must be denied.

IT IS SO ORDERED.