**In re NEPTUNE WORLD WIDE MOVING, INC., Debtor.**

**Bankruptcy No. 85 B 20213.**

United States Bankruptcy Court, S.D. New York.

May 11, 1989.

Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, Roseland, N.J., for Schneid-

er Moving & Storage Co. and Burnham Service Corp. (Peter R. Sarasohn and Bruce Buechler, of counsel).

Angel & Frankel, P.C., New York City, for debtor and debtor-in-possession (Martin Eisenberg and Luz Moreno, of counsel).

## DECISION ON OBJECTION TO CLAIM FILED BY BURNHAM SERVICE CORPORATION F/K/A SCHNEIDER MOVING & STORAGE CO.

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

The debtor, Neptune World Wide Moving, Inc. ("debtor"), has objected to the proof of claim filed in this confirmed Chapter 11 case by Burnham Service Corporation ("Burnham") on behalf of Schneider Moving & Storage Company ("Schneider"), a general unsecured creditor of the debtor. The debtor asserts that Schneider, as a result of duplicative billing, unrecorded set-offs, unrecorded agency payments and a failure to comply with the Agency and Hauling Agreement ("Agency Agreement") executed by the parties, should have its proof of claim expunged. Schneider claims that any duplications found and substantiated have resulted in a reduction of its claim. Furthermore, Schneider claims it has fully complied with the Agency Agreement and is entitled to the full amount of its timely filed proof of claim.

### FINDINGS OF FACT

1. On or about June 17, 1975, the Debtor and Schneider entered into an Agency Agreement, the terms of which governed moves performed by Schneider utilizing the debtor's Interstate Commerce Commission (ICC) rights to ship goods interstate.

2. On April 30, 1985, the debtor filed for relief under Chapter 11 of the Bankruptcy Code and continued in operation of its business as a debtor in possession in accordance with 11 U.S.C. § 1108.

3. In February, 1985, Burnham purchased Schneider at which time Schneider ceased to operate as an independent entity.

4. On July 1, 1987, an order was entered confirming the debtor's plan of reorganization.

5. After the plan of reorganization was confirmed by this court, the debtor filed its objection to Schneider's proof of claim, which originally sought the sum of $453,-317.96. Thereafter, Schneider voluntarily reduced its claim to the sum of $383,429.33. Schneider, in its post-trial memorandum, further consents to a reduction of its proof of claim by $9,439.44 which represents the amount of double billing testified to by Tom Towey, the debtor's Chief Executive Office, at the hearing on this motion to expunge Schneider's claim. This brings Schneider's claim to $373,989.89.

6. The relevant terms of the Agency Agreement dealing with Schneider's authority to act as an agent for the debtor in connection with interstate moves consist of paragraphs 6, 7, 11 and 16. Paragraph 6 of the Agency Agreement provides:

(a) [The debtor] will furnish and maintain on a current basis public liability and property damage insurance in such limits necessary to conform with minimum requirements of all federal, state and municipal regulatory bodies and agencies under jurisdiction to which [the debtor] may be subject. Such public liability and property damage insurance as may be afforded by [the debtor] shall be applicable to and for the protection of Agent only to the extent of and where Agent is operating its vehicle solely and exclusively within the scope of the agreement on behalf of [the debtor] or Agent's principle and in the operation of Agent's motor vehicle in the courts of such agency relationship created by this agreement.

(b) The [debtor] will place and maintain in effect, at its own expense, cargo insurance as a motor carrier for loss of or damage to goods, wares, and merchandise transported in the motor truck or trucks of the Agent in any such amount as the [debtor] may elect and/or as may be required by any public authority, and with any amount of deductible deemed proper by [the debtor].

(c) The [debtor], as carrier, holds itself responsible to the general public and appropriate regulatory bodies and agencies for all equipment operations, safety compliance, competency of personnel, dispatching of all equipment and shipments, settling of claims, submitting of reports, billing, collection, and distribution of revenue and money, and all other acts performed under carrier's interstate authority.

Paragraph 7 of the Agency Agreement states:

The Agent's driver will collect all money due the [debtor] for transportation services rendered, together with any other charges which may accrue in connection with the said hauling and mail in from destination, all of the said monies together with receipt properly signed by the shipper or consignee or his agent, to the Home Office of the [debtor], except that the [debtor] may at its discretion, direct or authorize any specific delivery to be made otherwise in keeping with the circumstance of any emergency which may arise. In the event such money due [the debtor] is not received by [the debtor] within ten days from the date collected, [the debtor] may charge Agent an additional fee of five percent (5%) of the amount collected.

Paragraph 11 of the Agency Agreement provides:

(a) All contracts and/or bills of lading for the hauling by the Agent of goods, wares and merchandise and/or other service shall be between the [debtor] and the shipper or consignor. In the event the Agent has the opportunity to acquire contracts for hauling of merchandise, he will on each specific instance, prior to acceptance of such merchandise, notify [the debtor's] Home Office and furnish sufficient detail to [the debtor] to enable it to contract for the handling of such shipment *in its own name*. (emphasis added).

(b) It is expressly understood and agreed that the Agent represents the [debtor] as an independent contractor to the extent authorized by the terms of this Agreement and not otherwise.

Paragraph 16 of the Agency Agreement provides:

The Agent shall be credited with, and entitled to receive, from the [debtor], payment for all services furnished by itself and its employees, as well as for its motor truck or trucks, in accordance with the current Motor Vehicle Equipment Classification and Hauling Commission Rate Schedule. It is understood and agreed by the parties hereto that said schedule is subject to change.

7. The procedures and compensation governed by paragraphs 6, 7, 11 and 16 of the Agency Agreement were summarized at the trial by the debtor's Chief Executive Officer, Tom Towey, who testified that information concerning a requested move would be directly telephoned to Schneider or the debtor. In the event a requested move was called in to Schneider, Schneider would register the requisite information with the debtor who would thereafter confirm the information and issue a bill of lading number to Schneider. This number was then inscribed by Schneider on a blank bill of lading provided by the debtor. The debtor maintained at its office duplicate bills of lading reflecting the identical information.

8. Both Towey and Marvin Schneider, the then president of Schneider, testified that paragraph 1 of the Agency Agreement indicated that, although Schneider would use its own equipment, all such equipment must be painted with the debtor's name and insignia and all moves had to be made under the aegis of the debtor. Additionally, Towey testified that pursuant to paragraph 6 of the Agency Agreement, the debtor maintained insurance and indemnified Schneider within the context of the agreement.

9. Upon completing a move, the debtor would pay Schneider a certain percentage of the gross revenue generated by the move depending upon the type of services that were performed by Schneider. The amounts due to Schneider were reflected on a distribution of revenue statement ("DR Statement"), which the debtor for-

warded to Schneider. Once Schneider confirmed the amounts on the DR statement, the debtor would thereafter pay Schneider in accordance with the DR statement. Towey acknowledged that Schneider would generally be entitled to 100% of the gross revenue of each move for all services performed except hauling (67% of gross revenues), booking commissions (15% of the gross revenue) and origin service (5% of the gross revenue), which were fixed at lower percentages.

10. A copy of Schneider's proof of claim with annexed DR statements and invoices was introduced by the debtor at the trial and admitted into evidence by this court. Although the debtor claims that Schneider failed to substantiate the fact that it actually performed the alleged moves, the DR statements and invoices offered by the debtor serve as an admission by the debtor that these documents are authentic and reflect the work performed by Schneider. Furthermore, the debtor did not question whether Schneider had in fact performed the services reflected in the DR Statements and invoices.

11. At the hearing, issues were raised with regard to Schneider's storage of furniture in Schneider's warehouse, as opposed to the debtor's warehouses, thereby depriving the debtor of a "corporate opportunity". The debtor also asserted that as a result of Schneider failing to notify the debtor of each move prior to the move, pursuant to the Agency Agreement, Schneider violated the Agency Agreement, thereby forfeiting compensation for these moves. The debtor also disputed Schneider's entitlement to booking commissions received in connection with AT & T moves because AT & T was already a contractual customer of the debtor when these moves were performed. Finally, the debtor contends that Schneider has already received compensation in connection with a number of moves reflected in the DR Statements.

12. Towey's testimony established that several of the moves performed resulted in Schneider storing the furniture in its own warehouse, as opposed to the debtor's warehouses. The debtor claims that it is entitled to the warehouse fees and that Schneider should not be compensated for these storage fees. Towey admitted that the Agency Agreement did not require that the debtor's warehouses always be utilized in a move. There was no evidence with regard to the actual monetary damage the debtor may have suffered because its warehouses had not been used. Since the debtor did not establish such damages, Schneider is entitled to receive compensation for the goods stored in its warehouse.

13. Towey's unrefuted testimony at trial established that Schneider had in fact belatedly notified the debtor of several moves after the moves had taken place, in violation of paragraph 11 of the Agency Agreement. These moves related to the following customers: Steinmetz, Brasher, Daley, Matthews, Benson, Paternostro, and Lumski. The debtor was paid for each of these moves by the respective customers.

14. With regard to the booking commissions paid to Schneider, Towey testified that the debtor has a written contract to provide moving services for AT & T and that this contract existed during the time in which Schneider was paid booking commissions for AT & T moves booked by Marvin Schneider.

## DISCUSSION

The debtor asserts that as a result of agency disloyalty, Schneider's claim should be reduced in the total amount of $92,-939.69. The substance of this argument derives from the theory that Schneider's late notification and its charge for AT & T booking commissions amounted to a violation of the Agency Agreement. A determination of Schneider's alleged liability hinges on whether, pursuant to the Agency Agreement, Schneider is an agent of the debtor, as asserted by the debtor, or is an independent contractor, as asserted by Schneider. Both parties agree that this court should apply the substantive law of New York State in interpreting the Agency Agreement and in determining the obligations of an Agent or independent contractor.

### The Agency Agreement

■ Although the Agency Agreement states that Schneider will be referred to as "Agent", Schneider argues that the document is ambiguous as to whether it is obligated to the debtor as an agent in light of the fact that paragraph 11(b) of the agreement states that "[i]t is expressly understood and agreed that the Agent represents the [debtor] as an *independent contractor to the extent authorized by the terms of this Agreement and not otherwise."* (emphasis added). In order to determine whether Schneider is an "agent" of the debtor or an "independent contractor", Schneider argues that this court should look beyond the contract in order to discern the true relationship of the parties, and look to the probable intent of the parties, citing *67 Wall Street Co. v. Franklin National Bank,* 37 N.Y.2d 245, 248–49, 371 N.Y.S.2d 915, 333 N.E.2d 184 (1975). In light of the testimony and evidence that was adduced at the trial, none of which contradicted or augmented the terms of the Agency Agreement, this court need not look beyond the terms of the Agency Agreement to determine the respective rights and obligations of the parties.

Agency is a contractual consensual relationship where one agrees to act on behalf of another. *In re Shulman Transport Enterprises, Inc.,* 744 F.2d 293, 295 (2d Cir.1984). The Restatement 2d of the Law of Agency defines the relationship as follows:

> The fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.

Restatement of the Law of Agency 2d, subsec. 1(1) (1958).

The elements of common law agency are: (1) consent; (2) fiduciary duty; (3) absence of gain or risk to the agent; and (4) control by the principal. *Boss v. International Broth. of Boilermakers, etc.,* 567 F.Supp. 845, 847 n. 1 (N.D.N.Y.1983) *aff'd* 742 F.2d 1446 (2d Cir.1983); *In re Robert Landau Associates, Inc.,* 56 B.R. 648, 652 n. 6 (S.D.N.Y.1986). The most important element of

any agency relationship is control. *In re Shulman Transport Enterprises, Inc.,* 744 F.2d at 295; *Boss v. International Broth. of Boilermakers, etc.,* 567 F.Supp. at 847; *In re Robert Landau Associates, Inc.,* 56 B.R. at 652. In this case, the Agency Agreement refers to Schneider as an "Agent" and an "Independent Contractor to the extent authorized by the terms of this agreement and not otherwise". The terms "agent" and "independent contractor" are distinct only colloquially; the usual "agent" is generally an independent contractor as well. *Columbia Broadcasting System v. Stokely Van Camp, Inc.,* 522 F.2d 369, 375, n. 14 (2d Cir.1975); *In re Robert Landau Associates, Inc.,* 56 B.R. at 652. In determining whether an independent contractor is an agent with authority to bind the principal, the court must look to

> accompanying circumstances, including the situation of the parties, their relations to one another, and the business in which they are engaged; the general usages of the business in question and the purported principal's business methods; the nature of the subject matters and the circumstances under which the business is done.

*Columbia Broadcasting System,* 522 F.2d at 375–76; *In re Robert Landau Associates, Inc.,* 56 B.R. at 652.

■ Based upon the Agency Agreement and the actions of the parties in compliance with this agreement, it follows that Schneider was an agent of the debtor. The Agency Agreement in this case governed Schneider's use of the debtor's ICC rights. It did not contemplate the debtor's control over the maintenance of Schneider's equipment nor over the actual move. However, the agreement did require Schneider to acquire a bill of lading number as a condition for Schneider to use the debtor's ICC rights for each move. Clearly, these rights could not be conferred upon Schneider without the consent of the debtor to whom all moves must be reported by Schneider prior to the move taking place. Therefore, but for these rights being conferred upon Schneider for each move at the debtor's discretion, Schneider could not move inter-

state. Accordingly, the debtor, as principal, retained total control over Schneider's interstate business.

Additionally, pursuant to the Agency Agreement, the debtor totally indemnified Schneider for its actions solely and exclusively within the scope of the Agency Agreement. Although Schneider indemnified the debtor in certain instances where the debtor's insurance did not fully compensate the debtor, basically, Schneider had little, if any, risk under this agreement.

Although the Agency Agreement refers to Schneider as an "independent contractor" this language is qualified to the extent Schneider was permitted to act as an independent contractor only to the extent authorized by the agreement. Although Schneider did in fact act in the capacity of an independent contractor, it did so only with regard to those actions which were not controlled by the Agency Agreement. These actions include the solicitation of business, the maintenance of its equipment and the actual move. However, the trucks that were used by Schneider for interstate moves were plastered with the debtor's name and insignia. All interstate moves were conducted under the debtor's aegis. The bills of lading were printed by the debtor and bore the debtor's name. The debtor generally collected most of the payments from customers and from Schneider. Thereafter, based upon the DR Statements completed by the debtor and reviewed by Schneider, the debtor paid Schneider pursuant to paragraph 16 of the Agency Agreement, entitled remuneration and paragraph 7, entitled "Collections". Moreover, Schneider's services were ultimately subject to the "standards, techniques, and policies established by [the debtor]", pursuant to paragraph 19 of the Agency Agreement. All these terms reflect the exercise of control by the debtor over Schneider and establish the overriding agency characteristics of the agreement.

### Late Notification and Waiver

■ Based upon the agency relationship between the parties, the debtor contends that Schneider acted with disloyalty as a result of giving late notice of seven moves and by acquiring and retaining payment for booking commissions for moves performed for AT & T. The debtor argues that an agent must not only account to his principal for secret profits but also forfeits his right to compensation for services rendered by him if he proves disloyal. *Maritime Fish Product, Inc. v. Worldwide Fish Products, Inc.*, 100 A.D.2d 81, 474 N.Y. S.2d 281 (1st Dept.1984).

With regard to its failure to give timely notification pursuant to the Agency Agreement, Schneider concedes that it did not give the requisite notice but argues that the debtor waived its right to object to these moves because the debtor ratified these moves by accepting payment for the moves and failing to complain to Schneider within a reasonable time after the moves took place. Schneider further argues that the debtor never required or insisted upon Schneider giving it prior notice and obtaining a bill of lading number before the completion of a move, as a condition precedent to utilizing the debtor's ICC rights, citing *Murray v. Capozzi*, 71 A.D.2d 786, 419 N.Y.S.2d 25 (4th Dept.1979).

This case is distinguishable from the *Murray* case in that the parties in that case acquiesced to the violations or derivations of an agreement for a lengthy period of time. In this case, the debtor failed to complain or take action against Schneider for a total of seven moves out of hundreds of moves performed by Schneider pursuant to the Agency Agreement. Based upon paragraph 11 of the Agency Agreement, the debtor did not have an affirmative responsibility to remind Schneider constantly of its obligation to inform the debtor about contracts for hauling of merchandise prior to Schneider's acceptance of such merchandise. However, the affirmative obligation rested with Schneider to inform the debtor of these moves. In failing to inform the debtor timely, Schneider effectively deprived the debtor of the discretion afforded to the debtor to accept and control the move. In fact, Schneider was not authorized to make interstate moves without the knowledge and approval of the debtor because it did not have ICC rights. The

debtor fully complied with the Agency Agreement and was effectively denied its rights under the agreement by Schneider's actions. The debtor had no affirmative duty to act when it received late notification, with the exception of opting to terminate the agreement for what may have amounted to a breach as a result of these late notifications. Schneider could have complied with the Agency Agreement merely by placing a telephone call. Accordingly, the debtor did not waive its right to object to untimely notice from Schneider.

■ Schneider suggests that the debtor may not retain the proceeds from the moves in which untimely notification was given because to do so would conflict with the theory of *quantum meruit*. *Quantum meruit* permits monetary recovery based on the equitable principle that a person should not be allowed to be enriched unjustly at the expense of another. *Waldman v. Englishtown Sportswear Ltd.*, 92 A.D.2d 833, 460 N.Y.S.2d 552 (1st Dept. 1983). To recover in *quantum meruit*, the claimant must establish: 1) that the services claimed were rendered in good faith; 2) that these services were accepted by the person to whom they were rendered; 3) an expectation of compensation; and 4) proof of the reasonable value of the services. *Reisner v. Recco Temporary Services*, 136 A.D.2d 686, 524 N.Y.S.2d 102, 103 (2d Dept. 1988). Although Schneider had an expectation of compensation and the debtor accepted payment for the services rendered, the debtor was deprived of the right to reject these services because it was not informed of the move until it was completed.

With regard to the services performed, Schneider claims it performed the seven moves in good faith and with the intent to comply with the Agency Agreement. Even though Schneider failed to comply with the timely notice requirement in the Agency Agreement, this failure amounted to a technical breach for which the debtor did not prove any damages. Apart from its belated notification as to seven moves, Schneider substantially performed these interstate moves as required under its Agency Agreement with the debtor. A party who has breached a contract may, nevertheless, recover the reasonable value of its services on a *quantum meruit* basis if it substantially performed the contract. *Pines of Islip, Inc. v. Island Concrete Corp.*, 22 Misc.2d 871, 196 N.Y.S.2d 252 (Sup.Ct.1959). Therefore, Schneider is entitled to be compensated both pursuant to the terms of the agreement and on the basis of *quantum meruit* in the amount of 46,040.58.

### AT & T Booking Commissions

■ The debtor objects to Schneider's claim with regard to booking commissions sought for several AT & T moves solicited by Marvin Schneider. The debtor does not dispute that Marvin Schneider solicited or was responsible for booking these moves. However, the debtor contends that in light of its existing agreement with AT & T, which provides that the debtor will perform moves upon the request of AT & T, Schneider had an obligation not to compete for AT & T moves. By seeking AT & T business the debtor concludes that Schneider, as an agent of the debtor, acted with disloyalty citing, *Lamdin v. Broadway Surface Advertising Corp.*, 272 N.Y. 133, 5 N.E.2d 66 (1936). Although the debtor's contract with AT & T permitted AT & T to use other interstate carriers, it is clear that Schneider could not make interstate moves without using the debtor's ICC rights. Marvin Schneider had actual notice of the debtor's contract with AT & T as a result of an earlier dispute over booking commissions between Marvin Schneider and Bob Kirschenbaum, the then president of the debtor. This dispute was settled by Schneider and the debtor splitting the fee. At this point Marvin Schneider should have realized that the debtor construed the payment of booking commissions to Schneider as inconsistent with the Agency Agreement. Although Marvin Schneider obtained the AT & T interstate moves in question, Schneider was on notice not to attempt to solicit moves from AT & T. The debtor had an absolute veto power regarding any interstate moves by Schneider for AT & T because Schneider could not use the debtor's interstate rights without the

debtor's consent. The disputed AT & T moves were inadvertently and mechanically paid for by the debtor's clerical staff during the confusing period immediately preceding the commencement of this case. Such payments in the face of the previous assertion by the debtor's management to Marvin Schneider that AT & T was already a customer of the debtor does not constitute a waiver of the debtor's right to object to compensating Schneider for booking AT & T moves pursuant to the debtor's ICC rights. Therefore, Schneider is not entitled to be compensated for booking the AT & T moves over the debtor's objection.

### CONCLUSIONS OF LAW

1. This court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(B).

2. The debtor has not established that Schneider was required to store merchandise from interstate moves in the debtor's warehouses nor the exact amount of damages sustained as a result of Schneider's failure to do so. Accordingly, Schneider is entitled to compensation for storing merchandise from interstate moves in its own warehouse.

3. Pursuant to the terms of the Agency Agreement and the corroborative testimony and evidence, Schneider is the debtor's agent with regard to the use of the debtor's ICC rights. Hence, Schneider was obliged to follow the procedures applicable under the Agency Agreement and is entitled to compensation in accordance with the terms of the Agency Agreement.

4. Schneider is entitled to compensation in the amount of $46,040.58, for the seven moves involving late notification to the debtor in accordance with the terms of the Agency Agreement and on the basis of *quantum meruit.*

5. Schneider is not entitled to be compensated for booking commissions for the AT & T moves under the aegis of the debtor's ICC rights in the amount of $46,-899.11.

6. Schneider's claim has been established to the extent of $327,110.78, whereas the debtor has sustained its objection to the extent of $46,899.11.

SETTLE ORDER on notice in accordance with the foregoing findings of fact and conclusions of law.